**Mary Williams CAZALAS,**
**Plaintiff-Appellant,**

v.

**UNITED STATES DEPARTMENT OF**
**JUSTICE, et al.,**
**Defendants-Appellees.**

**Nos. 82–3445, 82–3510.**

United States Court of Appeals,
Fifth Circuit.

July 22, 1983.

As Modified on Denial of Rehearing and
Rehearing En Banc Nov. 7, 1983.

Sylvia Roberts, Baton Rouge, La., for plaintiff-appellant.

Mary Williams Cazalas, pro se atty.

Leonard Schaitman, Frederick Geilfuss, Al J. Daniel, Jr., Washington, D.C., for defendants-appellees.

Before TUTTLE,* POLITZ and GARWOOD, Circuit Judges.

TUTTLE, Circuit Judge:

Mary Williams Cazalas appeals from the district court's denial of an award of attorney fees under Freedom of Information Act ("FOIA")[1] and Privacy Act ("PA")[2] suits against the United States Department of Justice, Attorney General William French Smith, and John Volz, the United States Attorney for the Eastern District of Louisiana. In these actions, appellant sought documents relating to alleged sexual discrimination she suffered as an Assistant United States Attorney. Cazalas, who was eventually dismissed from her position, also brought Equal Employment Opportunity complaints and a federal court action seeking reinstatement by proof of her claims of discrimination, retaliation, and the denial of free speech and due process. These actions are separate from the FOIA and PA actions involved in this appeal.

The government failed to comply in a timely manner with appellant's request for documents under the FOIA and PA. Cazalas was forced to file an Order to Show Cause in federal district court to acquire the materials. Appellees took longer than a year before complying fully with appellant's request. We held on a previous appeal that appellant "substantially prevailed" in her suit to compel production of the documents and remanded to the district court to determine appellant's entitlement to attorney fees under the standards set forth in *Blue v. Bureau of Prisons*, 570 F.2d 529 (5th Cir.1979) and *Lovell v. Alderete*, 630 F.2d 428 (5th Cir.1980).[3] *Cazalas v. Department of Justice*, 660 F.2d 612 (5th Cir.1981). The district court, finding that appellant failed to assert an interest of sufficiently public character, that the possible pecuniary gain and self-interest were sufficient to insure appellant would pursue her rights, and that the government's response was not unreasonable, declined to award attorney fees in the FOIA and PA actions.[4] We now determine that the district court abused its discretion by denying attorney fees and, furthermore, that appel-

---

* Circuit Judge of the Eleventh Circuit, sitting by designation.

1. 5 U.S.C. § 552(a)(4)(E).

2. 5 U.S.C. § 552a(g)(3)(B).

3. For the details of appellant's employment history and the production of the documents she requested under the FOIA and PA, *see Cazalas*, 600 F.2d at 612–19.

    5 U.S.C. § 552(a)(4)(E), the FOIA attorney fee authorization, provides: "The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."

5 U.S.C. § 552a(g)(3)(B), the PA attorney fee authorization, provides: "The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this paragraph in which the complainant has substantially prevailed."

Because of the similarity of these provisions, and for convenience, any reference to the FOIA contemplates the provisions of both Acts.

4. The question of appellant's entitlement to attorney fees in the Title VII suit on the merits of her sex discrimination claim is not before this Court.

lant's self-representation in the FOIA and PA proceedings does not pose a barrier to her receipt of a fee award.

### 1. Entitlement to Fee Award

■ The district court was faced with the issue of whether appellant is entitled to attorney fees under the criteria for FOIA suits of *Nationwide Building Maintenance, Inc. v. Sampson,* 559 F.2d 704 (D.C.Cir. 1977), as adopted by this Circuit in *Blue, Lovell,* and *Chamberlain v. Kurtz,* 589 F.2d 827, 842 (5th Cir.), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979). Under these criteria, a court must consider: (a) the benefit to the public from disclosing the requested information; (b) the commercial benefit to the complainant; (c) the nature of the complainant's interest in the records sought; and (d) whether the government had a reasonable basis in law for withholding the records sought. We now turn to an analysis of each of these factors.

### (a) Benefit to public

■ Appellant contends that the documents sought reveal a conspiracy to propagate a policy of sex discrimination by high public officials. She claims that the request for documents revealing the reasons for her dismissal resulted in a change in the method of firing non-veteran Assistant United States Attorneys by according them notice and a hearing, rights to which they previously had not been entitled. In addition, appellant urges that the disclosed documents reveal information helpful to the public in evaluating the wisdom of the political appointments of John Volz as United States Attorney and Michaelle Pitard Wynn, formerly an Assistant United States Attorney, as a United States Magistrate. The government responds by noting that appellant sought documents relating solely to her own employment and not to sex discrimination in the Justice Department in general; thus, appellees argue, appellant's FOIA request had little to do with increasing the fund of public information available for making political decisions. Appellees claim that the FOIA request was merely a substitute for discovery in the substantive Title VII litigation, and thus was not consistent with the policy of open government underlying the FOIA. *See* Senate Report No. 93–854, 93rd Cong., 2d Sess. 19 (1974 FOIA Amendments).

It is undisputed that appellant's FOIA complaint requested information to rebut the allegations against her and to avoid litigation by resolving administratively the Title VII charge then filed with the Equal Employment Opportunity Commission. However, an acknowledgment of appellant's strong personal interest in securing certain letters and notes is not necessarily inconsistent with an equally strong public interest in also receiving these items. This public impact goes beyond any public benefit derived solely from assuring government compliance with the provisions of the FOIA. Surely it is in the "public interest" to discover, if true, that the Department of Justice is less than entirely just in its dealings. In addition, it is inaccurate to assert that appellant merely sought to use the FOIA process as a substitute means of discovery in her Title VII action. Appellant's FOIA request was filed after she brought an EEO complaint but well before filing a federal district court employment discrimination action. Moreover, appellant still faced important stages of administrative process before she filed her suit, most notably a meeting in Washington, D.C., with Acting Director William Tyson of the Executive Office for United States Attorneys on March 7, 1979. These facts suggest that it is a mischaracterization to regard appellant's request solely as a substitute for discovery in the underlying substantive discrimination action.

On the basis of the above discussion, we conclude that this criterion weighs in favor of awarding attorney fees. The public interest in open access to government is well illustrated by this case; if decisions of the Department of Justice on internal matters are shown to be premised on less than total justice but instead are based on an impermissible factor such as gender, it would be

reasonable to believe that external matters, such as whether and with what vigor the Department of Justice prosecutes offenders of civil rights laws, could be based on problematical rationales as well. The public, as the beneficiary and the ultimate client of the Department of Justice's efforts to insure compliance with federal laws, needs to know the type of information sought by appellant in order to maintain effective oversight of its elected and appointed officials.

(b) *Commercial benefit to appellant and nature of appellant's interest in the records sought*

The two criteria of the commercial benefit to appellant and the nature of her interest in the records sought are similar enough that it is useful to consider them together.[5] Appellant claims she would receive no commercial benefit from the information sought. She also argues that the desired materials would be of general interest to all women in the employ of the United States. Appellees argue that appellant did not need the additional incentive of a fee award to convince her to pursue her FOIA claim because her personal interest in obtaining the documents was so strong. Appellees also point out that appellant's request was not motivated by journalistic, scholarly, or public interest concerns.

We agree with appellant that she would receive no *commercial* benefit of the type Congress indicated would be inappropriate to encourage by attorney fees. *See* Senate Report No. 93–854 at 19. Commercial profit pursued by a business firm seeking trade information must be carefully distinguished from the type of benefit appellant would receive if the information sought proved her discrimination claims. While appellant's eventual reinstatement would result in a personal and possibly a pecuniary benefit, thus undoubtedly providing some incentive for her to bring the FOIA complaint, the information sought would not provide the type of commercial profit that Congress indicated is undeserving of special protection. Appellant's receipt of some pecuniary benefit from a back pay award, *see* 42 U.S.C. § 2000e–5(g) (back pay and equitable relief in an EEO award), is not inconsistent with a broader public benefit being served by the production of the documents here sought. We believe such broader purpose exists in this case, so we find that these factors weigh in favor of a fee award.

Even were we inclined to find the absence of a broader public benefit resulting from the production of the documents, these two factors would still weigh in appellant's favor because of the government's recalcitrance in complying with her request.[6] Congress has observed that such behavior on the part of the government merits an award that serves a punitive purpose, almost regardless of the necessity of such an award to encourage an FOIA complainant to pursue his or her rights:

> The private self-interest motive of, and often pecuniary benefit to, the complainant will be sufficient to insure the vindication of the rights given in the FOIA. The court should not ordinarily award fees under this situation *unless* the government officials have been recalcitrant in their opposition to a valid claim or have been otherwise engaged in obdurate behavior.

Senate Report No. 93–854 at 19 (emphasis added).

(c) *Basis in law for withholding documents*

This Court found, on the previous appeal of this case, that the government withheld significant documents until after appellant

---

5. Congress indicated that a commercial interest should entail sufficient pecuniary incentives to make a fee award unnecessary. Journalistic, scholarly, and public-interest concerns, however, deserve special encouragement by means of fee awards. *See* Senate Report No. 93–854 at 19.

6. Cazalas first filed her FOIA request on December 19, 1978, and did not receive all the documents until over one year later, on December 28, 1979. In addition, the government exceeded, without proffering any valid explanation, the time limits for additional responses and appeals.

filed her FOIA complaint in the district court. Most notably, the government failed to turn over a letter by United States Attorney John Volz to Deputy Attorney General Benjamin Civiletti and notes of the investigation of the informal Equal Employment Opportunity complaint by David Morman. *Cazalas,* 660 F.2d at 621–22. Appellant contends that there was no reasonable basis for the government's withholding of these documents. She claims that the government officials only wanted to avoid embarrassment and to harass her. Appellant further urges that these documents failed to reside in any of the nine statutory exemptions to the FOIA. Cazalas notes that she is entitled to access to her EEO investigative file, including the Morman notes, under 29 C.F.R. § 1613.217 (agency must provide complainant with EEO investigative file for comment).

█ Upon the trial of this case, the district court found that "it seems unlikely that the Department's refusal to release the documents had a reasonable basis." Appellees argue, however, that this factor hardly outweighs the other three *Blue* criteria, all of which the government claims militate against a fee award. In the alternative, appellees attempt to claim the applicability of FOIA exemption five to the document sought. 5 U.S.C. § 552(b)(5). This exemption applies to, "inter-agency or intra-agency memorandums or letters which would not be available to a party other than an agency in litigation with the agency." Materials involving the deliberative process may not be withheld if they would be discoverable in private litigation. Such materials are exempt to protect the consultative functions of government by furthering open and frank discussion within and between agencies of proposed administrative actions. *See Cooper v. Department of Navy,* 558 F.2d 274, 277 (5th Cir.1977). The Supreme Court thus recognized that, while different treatment must be accorded materials reflecting deliberative policy-

making processes than is accorded purely factual, investigative materials, exemption five must be delimited, "as narrowly as consistent with efficient government operation." *Environmental Protection Agency v. Mink,* 410 U.S. 73, 89, 93 S.Ct. 827, 837, 35 L.Ed.2d 119 (1973), *quoting* Senate Report No. 813, 89th Cong., 1st Sess., 9 (1965) and House of Representatives Report No. 1497, 89th Cong., 2d Sess., 10 (1966).

On the basis of these principles, we fail to see how the appellees' withholding of the documents requested by appellant is supported by even a colorable basis in law. Rather, the material sought was discoverable in private litigation as well as under the FOIA. The documents concern investigative facts forming the basis for a personnel decision and do not encompass assessments of a policy nature. Appellant's request should have been met promptly and in full. This factor also weighs in favor of an award of attorney fees.

Since all of the *Blue* criteria weigh in favor of an award of attorney fees, we next proceed to examine the appropriateness of such an award where appellant represented herself in the FOIA proceedings.[7]

### 2. Fee Award to Attorney Proceeding Pro Se

We now confront an issue of first impression in this Circuit, namely whether an attorney litigant proceeding *pro se* is entitled to an award of attorney fees under the FOIA. This Circuit held in *Barrett v. Bureau of Customs,* 651 F.2d 1087 (5th Cir. 1981), that the FOIA precludes an award of attorney fees to a *pro se* litigant who is not an attorney. The Court explicitly left open the question of whether an attorney proceeding *pro se* is entitled to such fees.[8]

Our fellow circuits have not come to a definitive resolution of this issue. The District of Columbia Circuit has granted attorney fees to attorneys representing themselves in FOIA cases, *Cuneo v. Rumsfeld,*

---

**7.** The resolution of the following issue is, of course, irrelevant to the granting of attorney fees for the services performed for appellant by attorney Sylvia Roberts.

**8.** We have also left open the same question under the Civil Rights Attorney's Fees Awards Act. *See Cofield v. City of Atlanta,* 648 F.2d 986, 987 (5th Cir.1981).

553 F.2d 1360 (D.C.Cir.1977). Since that Circuit, however, has also granted fees to non-attorneys proceeding *pro se,* the analysis offered does not focus on the distinctions we must face. *See Cox v. United States Department of Justice,* 601 F.2d 1 (D.C.Cir. 1979); *Holly v. Acree,* 72 F.R.D. 115 (D.D.C. 1976), *aff'd by order sub nom. Holly v. Chasen,* 569 F.2d 160 (D.C.Cir.1977).

■ The Fourth Circuit declined to award attorney's fees to *pro se* attorneys in a Truth-in-Lending Act proceeding in *White v. Arlen Realty & Development Corp.,* 614 F.2d 387 (4th Cir.1980). The Court there was persuaded that *pro se* attorneys would not be objective counselors, and that they could engage in abusive fee generation when acting as a private attorney general. The Ninth Circuit, apparently rejecting similar arguments, granted attorney fees to a defendant in a Civil Rights Attorney's Fees Awards Act case in *Ellis v. Cassidy,* 625 F.2d 227 (9th Cir.1980). These cases, thus split, are not persuasive one way or the other.

Appellees forward five arguments counseling against an award of attorney fees in these circumstances. These arguments are unavailing. First, appellees urge that the policy of access to government records is not forwarded by an award since an attorney proceeding *pro se* will not have out-of-pocket legal expenses that will deter him or her from pursuing an FOIA action in the courts. Appellees argue, in this regard, that the fee award would amount to a punishment against the government because appellant has not incurred any compensable expenses. Appellant amply demonstrated the costs she incurred, both from other work foregone and in terms of personal energy, due to her *pro se* work. She incurred precisely the sort of expenses that might deter a less determined litigant. Thus, the use of the word "incurred" in the statute is not determinative one way or the other. Also, the award is not a punishment in the sense of being a windfall for appellant, but amounts to a punishment only to the extent that the government should be reprimanded for unreasonably failing to comply with its own governing laws.

Second, appellees reason that the statute is designed to encourage litigants to consult with objective attorneys so as to avoid unnecessary litigation. A *pro se* attorney, while perhaps possessing the necessary skills to pursue a claim, may lack the requisite objectivity. We find little evidence to support appellees' assertion that the purpose of the fee provision is to insure *objective* representation by an attorney. On the contrary, the fee provision is designed to promote *vigorous advocacy* on behalf of citizens seeking government information so that the government will be unable to escape from *rightful compliance with the* FOIA. *See* S.Rep. No. 93–854 at 17–19. Citizens are more likely to be successful in obtaining desired documents in the face of government intransigence when they have secured the services of one trained in the art of advocacy. Appellant provided precisely the type of determined representation Congress sought to make available to all FOIA litigants meeting the *Blue* criteria.

Appellees' third argument is that attorneys will abuse the FOIA by bringing litigation solely to generate fees for themselves. There is little reason to suspect that awards of attorney fees to *pro se* attorney litigants will be a source of abusive fee generation. Where a request for information is justified, the government should respond promptly by providing that information and no fee will be necessary. Where the government has a colorable basis in law for withholding the documents, most courts will be reluctant to grant fees under the *Blue* analysis. In this case, it would be ludicrous to suggest that appellant sought out a chance for *pro se* litigation to support her otherwise inactive practice. At the time she filed her FOIA request, appellant had no idea the government would be so slow in forthcoming with information. She could not contemplate that court action would be necessary. Nor, at the time she filed her request, was appellant's practice inactive. She was employed as an Assistant United States Attorney and presumably could not even proceed *pro se* until after

she was terminated from the government's employ.

Finally, the government contends that, since the Court has already refused to grant fees to *pro se* non-attorney litigants based on foregone income, there is no principled basis for reimbursing attorneys for income lost as a result of self-representation. This argument also fails. There are several commendable reasons for making the distinction urged by appellant. Congress sought to encourage legal representation; thus it makes sense to compensate lawyers for this work. Also, in compensating a *pro se* litigant, the only real measure of approximating fees incurred is the opportunity cost, or work foregone, due to the representation. This is relatively simple to value where the *pro se* litigant is an attorney, for the work foregone is of the same nature as that actually performed. Such is not the case for non-attorney *pro se* litigants. *See Pitts v. Vaughn,* 679 F.2d 311, 313 (3d Cir. 1982); *Cunningham v. Federal Bureau of Investigation,* 664 F.2d 383, 386 (3d Cir. 1981).

More fundamentally, appellees' arguments fail to come to terms with the fee provision's raison d'etre.[9] Congress evinced its strong desire, by enacting the FOIA, to establish a national policy of open government through the disclosure of government information. Senate Report No. 93–854 at 17. *See Cuneo,* 553 F.2d at 1363–64. A crucial means of implementing this policy is a liberal attorney fee provision. The fee provision is designed to remove the barriers a private individual faces in insuring government compliance with the policy of open government. Senate Report No. 93–854 at 17. Thus, the fee provision serves three clear policies. First, it acts as an incentive for private individuals to pursue vigorously their claims for information. It allows litigants to overcome barriers, most particularly the need for legal fees and legal expertise, that government may erect in an effort to escape compliance with the law. This same incentive is necessary where an attorney seeking information is utilizing his or her own services. Second and third, the provision serves a deterrent and, to a lesser extent, a punitive purpose. Congress recognized the practical effect of the fee provision is that, "if the government had to pay legal fees each time it lost a case, it would be much more careful to oppose only those areas it had a strong chance of winning." *Id.* at 17, *quoting* Hearings Before the Subcommittee on Intergovernmental Relations of the Committee on Government Operations and the Subcommittee on Separation of Powers and Administrative Practice and Procedure of the Committee on the Judiciary, Vol. I at 211. The fee provision is designed to deter the government from opposing justifiable requests for information under the FOIA and to punish the government where such opposition is unreasonable. These goals apply with equal force where an attorney litigant proceeds *pro se.*

We conclude that the arguments mounted by the government are inadequate to overcome the strong national policy of open government and the crucial role that attorney fees play in protecting this interest. Appellant, through her self-representation, employed legal skills to vindicate an important public right and is entitled to be compensated for the work she performed. That a litigant attorney represents herself or himself does not preclude an award of attorney fees under the FOIA.

### 3. *Recusal of Judge Carr*

Appellant claims that Judge Carr should have recused himself from the district court proceedings due to bias. Appellant notes especially that Judge Carr denied attorney fees and costs after this Court's remand of the case, but before we issued our mandate; appellant thus contends that Judge Carr acted without the benefit of a review of the record. Appellant brings a serious charge of judicial misconduct with-

[9]. It is appropriate to turn to the statute's legislative history because the statute is ambiguous on its face with respect to this issue.

out any basis for so doing. Judge Carr clearly explained that his initial ruling was too early because this Court delayed its mandate due to a motion to extend time. Judge Carr properly vacated his earlier opinion and order, reconsidered the matter, and filed a new opinion and order. Appellant alleges that Judge Carr held no hearing on her request that he disqualify himself. The record plainly indicates otherwise. Appellant herself stated on the record that she had "no objection," in light of Judge Carr's declaration of impartiality, to his proceeding with the case. Appellant adduced absolutely no evidence of extra-judicial interest or contact to support a claim of bias. *See United States v. Grinnel Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966); *Berger v. United States,* 255 U.S. 22, 31, 41 S.Ct. 230, 232, 65 L.Ed. 481 (1921); *Davis v. Board of School Commissioners of Mobile County,* 517 F.2d 1044, 1051 (5th Cir.1975).

We can only conclude that appellant's charge, while an allegation of the utmost seriousness, is frivolous in content and wholly without merit. It is a claim that should not be made lightly, as it apparently was in the instant action.

### 4. *Conclusion*

We find that: (1) appellant was entitled to attorney fees under the criteria in *Blue;* (2) the district court clearly erred in holding otherwise; and (3) the fact of appellant's self-representation does not preclude a fee award. We therefore remand to the district court to determine the appropriate amount of a fee award, reflecting fees for this appeal, and to enter an appropriate judgment consistent with this opinion.

REVERSED AND REMANDED.

GARWOOD, Circuit Judge, concurring in part and dissenting in part:

I concur in part 3. of the majority opinion. I likewise agree that the trial court

1. I also observe that it has not been determined that the government or any of its officials acted improperly toward appellant in her capacity as an Assistant United States Attorney. *Cf.*

abused its discretion in denying appellant attorney fees for the services of her attorney, Sylvia Roberts, and I concur in the introductory portion of part 1. of the majority opinion, in part 1.(c) thereof, and in so much of 1.(b) thereof as is based upon "the government's recalcitrance in complying with her request."

However, I respectfully disagree with the majority's conclusion that the trial court abused its discretion in determining that the "public benefit" factor did not mandate an award of attorney fees and that appellant's request was almost exclusively related to and motivated by personal concerns, with any connection between the documents requested and a public benefit being most limited, incidental, and remote. Not every minor or remote public benefit suffices. *See Blue v. Bureau of Prisons,* 570 F.2d 529, 533 (5th Cir.1978); *Lovell v. Alderete,* 630 F.2d 428, 433 (5th Cir.1980).[1] Just because a governmental employee's individual employment grievance alleges matters which may reflect on the proper performance of her employer's official duties does not necessarily mean the grievance is a matter of public concern; and even if some aspects of the grievance may touch upon matters which genuinely are of public concern, if they do so "in only a most limited sense" the matter may still be "most accurately characterized as an employee grievance concerning internal office policy." *Cf. Connick v. Myers,* —— U.S. ——, ———–——, ——, 103 S.Ct. 1684, 1690, 1693, 75 L.Ed.2d 708, 720–21, 724 (1983) (First Amendment limitations on discipline for governmental employee speech).

Nevertheless, in my opinion the government's extreme recalcitrance in withholding the requested records and its lack of a reasonable basis for doing so, which are clearly established here, of themselves mandate an award of attorney fees under the circumstances of this case.

*Chamberlain v. Kurtz,* 589 F.2d 827, 842 (5th Cir.), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979).

I also respectfully dissent from the majority's holding that an attorney litigant proceeding *pro se* is eligible for an award of attorney fees under the FOIA. As the majority observes, we held in *Barrett v. Bureau of Customs*, 651 F.2d 1087 (5th Cir. 1981), that a nonattorney *pro se* litigant was not eligible for an attorney fees award under the Privacy Act (which we construed as being identical in these respects to the FOIA), but expressly left the present question open. However, I do not believe that Congress intended to discriminate between *pro se* FOIA litigants solely on the basis of whether they were licensed to practice law. *Cf. Hannon v. Security National Bank*, 537 F.2d 327 (9th Cir.1976) (unlicensed law graduate litigating *pro se* not eligible for attorney fees under Truth-in-Lending Act). I agree with the statement of Judge Thomas A. Clark, made in his dissenting opinion in *Lovell v. Alderete, supra,* respecting an issue not reached by the majority there, that "[o]ne cannot justifiably assert that an attorney representing himself is more entitled to a fee [under the FOIA] than a lay person representing himself." 630 F.2d at 438.

In *Cofield v. City of Atlanta*, 648 F.2d 986, 987 (5th Cir.1981), we held a nonattorney *pro se* litigant was not eligible for an attorney fees award under 42 U.S.C. § 1988, and noted that "an act allowing attorney's fees is 'not passed for the benefit of attorneys but to enable litigants to obtain competent counsel . . . .' *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 719 (5th Cir.1974)." Similarly, in *Crooker v. United States Department of the Treasury*, 634 F.2d 48, 49 (2d Cir.1980), the Court noted the purpose of the FOIA attorney fees provision as "removing 'barriers' to the average person's ability to secure compliance with the Act." *See also,* to the same effect, *Crooker v. United States De-*

partment of Justice, 632 F.2d 916, 920 (1st Cir.1980) ("... eliminating the obstacle of attorney fees ..."). This purpose is not subserved by a distinction which favors *pro se* litigants who are licensed attorneys over those who are not.

Our result in *Barrett* was influenced by the view that:

"Persons contemplating legal action should be encouraged to consult with attorneys. Litigation may not be necessary. Frustrations and misunderstandings or failures of understanding by the intended complainant may be quickly soothed and resolved by counsel." *Id.* at 1089–90.

Essentially the same sentiments appear to have motivated the Fourth Circuit to hold that an attorney *pro se* litigant was not eligible for an attorney fees award under the Truth-in-Lending Act. *White v. Arlen Realty & Development Corp.,* 614 F.2d 387 (4th Cir.1980).[2]

Our result in *Barrett* was also influenced by reading the Privacy Act and the FOIA attorney fees provisions as allowing recovery only for "attorney fees . . . incurred" by the litigant. 651 F.2d at 1089. By a parity of reasoning, it seems plain that these words contemplate and refer to a situation where services are performed for the litigant by some other person or persons. Attorney "fees" are not generated by a person doing something for himself or herself; and "incurred" likewise imports a relationship to one or more others. We have held that a litigant need not be legally obligated to pay his attorney in order for the latter's services to form the basis for a statutory award of attorney fees. But the rationale of those holdings does not support the award of attorney fees to a *pro se* litigant, attorney or otherwise. For exam-

---

2. The Court stated:

"... effective legal representation is dependent not only on legal expertise, but also on detached and objective perspective. The lawyer who represents himself necessarily falls short of the latter." *Id.* at 388.

It further noted that there the attorney *pro se* litigant demonstrated "personal embroilment

and lack of objectivity." *Id.* That sort of *personal* embroilment and lack of objectivity, as distinguished from professional zeal and undivided loyalty to the client, is not entirely absent from this case, understandable though it may be in human terms. *See* part 3. of majority opinion.

**1060**

ple, we stated in *Miller v. Amusement Enterprises, Inc.,* 426 F.2d 534, 538–39 (5th Cir.1970):

> "What is required is not an obligation to pay attorney fees. Rather what—and all—that is required is the existence of a relationship of attorney and client, a status which exists wholly independently of compensation, as witness the effective service of counsel in the defense of criminal cases, the assertion of post-conviction habeas remedies and the now widespread organized services on behalf of the poor.
>
> " . . .
>
> " . . . the fees allowed are to reimburse and compensate for legal services rendered and will not go to the litigants, named or class." (Footnotes omitted.)

Plainly we contemplated that the services for which the award was made would be those rendered to the litigant by someone else.

There is arguably a loss of economic efficiency in motivating a lawyer *pro se* litigant to rely exclusively on another as counsel, rather than using his own skills. However, this same loss of efficiency applies, though to a lesser extent, respecting non-lawyer litigants. For example, such litigants, if compensated for what they did, might by their own efforts relieve their counsel of much that he would otherwise have to do. Further, gains in economic efficiency will tend to be reduced to the extent the award of fees to the attorney *pro se* litigant is on the same basis that would have obtained had the litigant and attorney been different persons. Moreover, avoidance of "personal embroilment and lack of objectivity," *White, supra,* may itself be an efficiency *gain. See Barrett* at 1089–90. In my opinion, the considerations of economic efficiency in this setting do not warrant paying attorney *pro se* litigants for the same things for which we refuse to pay nonattorney *pro se* litigants. An attorney has no greater right to litigate *pro se* than does a nonattorney. I do not believe that Congress contemplated any such discrimination. Moreover, I believe the statutory wording plainly contemplates payment for

services rendered to the litigant by someone else, not payment for what the litigant does for himself. I therefore respectfully dissent from the holding in part 2. of the majority opinion.