Robert A. ARONSON,
Plaintiff, Appellee,

v.

UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOP-
MENT, et al., Defendants, Appellants.

No. 88–1524.

United States Court of Appeals,
First Circuit.

Heard Nov. 1, 1988.

Decided Jan. 19, 1989.

Michael E. Robinson, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., with whom John R. Bolton, Asst. Atty. Gen., Frank L. McNamara, Jr., U.S. Atty., and Leonard Schaitman, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., were on brief, for defendants, appellants.

James H. Lesar, Washington, D.C., for plaintiff, appellee.

Before BOWNES, BREYER and SELYA, Circuit Judges.

BOWNES, Circuit Judge.

This is an appeal by the United States Department of Housing and Urban Development (HUD) from an award of attorneys fees to Robert A. Aronson under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(4)(E). Aronson and another attorney prosecuted the action in the district court. A third attorney handled the appeal. The district court awarded fees to Aronson, as well as the other two attorneys. There are two issues on appeal: whether attorney fees should have been awarded at all; and, if so, whether Aronson, as a *pro se* lawyer, is entitled to fees for the time he spent on the case.

I.

The facts and issues undergirding this appeal are found in *Aronson v. U.S. Dep't of Housing and Urban Dev.*, 822 F.2d 182 (1st Cir.1987). We recapitulate what is

necessary for the questions now before us. Aronson brought an FOIA action against HUD seeking information about individual mortgagors whose mortgages were insured under the National Housing Act and who were entitled to receive reimbursements, known as "distributive shares," from HUD when the mortgage insurance expired. HUD refused to release the information claiming that to do so would result in a "clearly unwarranted invasion of privacy" and that therefore the information was exempt from disclosure under FOIA's "Exemption 6," 5 U.S.C. § 552(b)(6).

For present purposes it suffices to say that the "distributive shares" came from insurance premiums paid by lenders who issued and insured the mortgages under the National Housing Act. HUD was obligated by law, 12 U.S.C. § 1711(c), to pay over the "distributive" shares to those to whom it was due. HUD's performance of this obligation was less than satisfactory. In 1981, the Comptroller General reported that as of March 31, 1980, there were 198,000 unpaid "distributive shares" totaling $52 million. The Comptroller General found that HUD did not follow effective procedures for informing mortgagors about applying for their distributive shares, for obtaining mortgagors' addresses or for locating mortgagors whose addresses were unknown.

HUD's poor performance record opened up a field for private tracing operations. A private tracer, through a FOIA request, would ask HUD for the names and last known addresses of mortgagors entitled to distributive shares. When the tracer located an eligible recipient, he/she offered to help obtain the amount due in return for a percentage of it. Starting in 1980 HUD gave the information requested to private tracers. It also instituted new and more effective procedures for locating individuals to whom distributive shares were owed, including a one-year search period after the shares had vested. The search period was later expanded to two years.

In 1985, HUD's FOIA policy changed. It refused to give information to tracers until the two-year search period had expired. It also applied a two-year period of withholding information as to unclaimed shares that had vested prior to December 31, 1979 and that had become reactivated as a result of a ruling by the Comptroller General that the statute of limitations did not apply to distributive shares. This was the situation when Aronson entered the picture.

Aronson was one of the private tracers who had obtained information from HUD in the past. His usual fee was 35 percent of the amount refunded. In January 1986 Aronson made a FOIA request for the entire file of unpaid distributive shares that had vested as of December 31, 1985. Following its new policy, HUD released only the information for shares vesting between December 31, 1979 and December 31, 1983. Aronson brought suit in the district court. The court held that HUD was justified in refusing to disclose information for shares vesting after December 31, 1983 but ordered disclosure of shares vesting before December 31, 1979. Aronson appealed from the decision of nondisclosure as to shares vesting after December 31, 1983. HUD did not appeal.

We ruled that HUD's disclosure obligation began after its initial one-year search period expired. We felt that withholding information until the end of the second search year was not justified. We, therefore, held that Aronson was entitled to the information requested for those shares vesting between December 31, 1984 and December 31, 1985. 822 F.2d at 188.

Following our opinion, Aronson requested attorney fees, and after a hearing, the district court awarded the requested amount. This appeal ensued.

## II.

■ We start our review fully cognizant that "[a]n award of attorney fees under the FOIA is a matter for the sound discretion of the trial court." *Education/Instruccion, Inc. v. U.S. Dep't of Housing and Urban Dev.*, 649 F.2d 4, 7 (1st Cir.1981). This discretion, however, is circumscribed by two generally accepted principles. The first is that a plaintiff is not automatically entitled to an award of attorney fees just

because he/she succeeds in obtaining the requested information. *Crooker v. U.S. Parole Comm'n*, 776 F.2d 366, 367 (1st Cir.1985); *Education/Instruccion*, 649 F.2d at 7; *Crooker v. U.S. Dep't of Justice*, 632 F.2d 916, 922 (1st Cir.1980); *Blue v. Bureau of Prisons*, 570 F.2d 529, 533 (5th Cir.1978).

■ The second restraint on the district court's discretion is that it must take into consideration four factors in determining whether attorney fees should be awarded under FOIA. These four factors are: "(1) the benefit to the public, if any, derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law." *Crooker v. U.S. Parole Comm'n*, 776 F.2d at 367. *See also Cazalas v. U.S. Dep't of Justice*, 709 F.2d 1051, 1053 (5th Cir.1983); *Aviation Data Serv. v. F.A.A.*, 687 F.2d 1319, 1321 (10th Cir.1982); *Education/Instruccion*, 649 F.2d at 7; *Crooker v. U.S. Dep't of Justice*, 632 F.2d at 922.

■ With this backdrop in place we turn to the district court opinion. The court first found that plaintiff was eligible for attorney fees because he had substantially prevailed in the litigation. Appellant does not question this preliminary conclusion. We find it correct. The court then considered the four factors in determining whether Aronson was entitled to attorney fees. It found that plaintiff's action conferred a significant benefit on the public. In doing so, the court explicitly relied on the following statement from our opinion in the first appeal.

It cannot be gainsaid that there is a strong public interest in disclosure when that disclosure would lead to the distribution of refunds that would otherwise have little chance of reaching their rightful owners. HUD recognized this public interest in its pre–1984 policy of releasing information on all eligible mortgagors. It continues to recognize this interest today in its policy of releasing information after the two-year search period. The public interest is manifestly served by the disclosure and consequent disbursement of funds the government owes its citizens. The problem of nondisbursement in this context is dramatized by the alarming figure of $52 million the government had failed to distribute as of March, 1980. The public interest in the release of the information, and in the attendant correction of the problem of nondisbursement, is consistent with FOIA's goals of the exposure of agency action to public inspection and oversight. *See Department of Air Force v. Rose*, 425 U.S. 352, 360–61, 96 S.Ct. 1592, 1598–99, 48 L.Ed.2d 11 (1976).

*Aronson*, 822 F.2d at 185. Despite the appearance of being self-laudatory, we agree with the district court.

The court discussed the second and third factors together: the commercial benefit to the complainant and the nature of the complainant's interest in the records sought. The court found that the potential for commercial personal gain did not negate the public interest served by Aronson's lawsuit. It pointed out that plaintiff was but one of many tracers engaged in ferreting out people to whom HUD owed distributive share funds. The court's findings on factors two and three did not constitute an abuse of discretion. We point out that the failure of HUD to comply reasonably with its reimbursement duty would probably only be disclosed by someone with a specific interest in ferreting out unpaid recipients. This is a case where financial interest serves the public good.

Finally, the district court found that the government's withholding of the records did not have a reasonable basis in law. This part of the district court opinion bears quoting.

In my opinion, it appears that defendants refused to disclose these records to avoid the embarrassment of public scrutiny that would result from disclosure of the amount of funds HUD failed to distribute. More importantly, though, it is disingenuous for defendants to argue that their withholding of records was colorable when the Court of Appeals held

that, while Exemption 6 generally applies to these records, the exemption did not apply to the vast majority of plaintiff's request. The court specifically held that HUD's "expanded search procedures" after the first year were murky and lacking in both definition and merit, and that defendants were justified in withholding records only for the first year after the vesting of shares. Defendants' position was also contrary to the policy established by its prior general counsel. Defendants' withholding of records was ill-conceived and served little purpose other than to frustrate the efforts of Aronson to expose the inefficiencies of HUD's Mortgage Insurance and Accounting office.

Although appellant may disagree with this holding, it clearly does not constitute an abuse of discretion. We uphold the district court's finding that due consideration of the four fee factors justifies an award of attorney fees under the pertinent provision of FOIA, 5 U.S.C. § 552(a)(4)(E).

### III.

■ Since appellant does not contest the computation of the fees, the remaining issue is whether Aronson may recover fees for his own time as distinct from that of counsel retained by him. The question whether a *pro se* litigant who is an attorney may recover for the time spent on an FOIA case is one of first impression in this circuit.

We begin our analysis by noting that with the exception of the D.C. Circuit[1] all of the circuits that have considered the question have held that a non-lawyer *pro se* litigant is not entitled to attorney fees. *Crooker v. U.S. Dep't of Justice*, 632 F.2d 916 (1st Cir.1980); *Kuzma v. I.R.S.*, 821 F.2d 930, 931 (2d Cir.1987); *Cunningham v. F.B.I.*, 664 F.2d 383, 384–87 (3d Cir.1981); *Barrett v. Bureau of Customs*, 651 F.2d 1087 (5th Cir.1981), *cert. denied*, 455 U.S. 950, 102 S.Ct. 1454, 71 L.Ed.2d 665 (1982); *Wolfel v. United States*, 711 F.2d 66 (6th Cir.1983); *DeBold v. Stimson*, 735 F.2d 1037, 1041 (7th Cir.1984); *Merrell v. Block*,

809 F.2d 639, 642 (9th Cir.1987); *Burke v. U.S. Dep't of Justice*, 559 F.2d 1182 (10th Cir.1977); *Clarkson v. I.R.S.*, 811 F.2d 1396, 1397 (11th Cir.), *cert. denied*, 481 U.S. 1031, 107 S.Ct. 1961, 95 L.Ed.2d 533 (1987).

As far as we can determine, only three circuits have considered the question of whether lawyers acting *pro se* in FOIA cases should be awarded attorney fees for their time. In *Falcone v. I.R.S.*, 714 F.2d 646 (6th Cir.1983), *cert. denied*, 466 U.S. 908, 104 S.Ct. 1689, 80 L.Ed.2d 162 (1984), the court held "that the same reasons which led us, and the majority of the other circuits, to deny attorney's fees to *pro se* non-lawyer FOIA plaintiffs apply with equal validity to *pro se* attorney plaintiffs." *Id.* at 647. The court then enumerated the reasons. First, the award of fees was intended to relieve plaintiffs of the burden of legal costs; a fee award was not intended as a reward for successful claimants or a penalty against the government. This rationale applies to *pro se* attorneys because no legal costs are incurred. The second reason for denying fees to *pro se* litigants was to encourage them to seek legal advice before commencing litigation with the hope that legal advice might prevent unwarranted litigation. The court pointed out that an attorney who represents himself might have the requisite legal skills but would probably lack the "detached and objective perspective" necessary to meet the aims of the Act. *Id.* The final reason for denying *pro se* fees was to prevent claimants from using the Act to generate fees rather than pursue legitimate personal claims. The court did not feel that Congress intended to subsidize lawyers without clients. *Id.* at 647–48.

In *Cazalas v. U.S. Dep't of Justice*, 709 F.2d 1051, the Fifth Circuit came to the opposite conclusion. It reasoned that the fee provision served three purposes: (1) as an incentive for private individuals to pursue vigorously claims for information; (2) & (3) as a deterrent and as a punitive measure against the government. In the words of the court: "The fee provision is

---

**1.** *Cox v. U.S. Dep't of Justice*, 601 F.2d 1 (D.C.Cir.      1979).

designed to deter the government from opposing justifiable requests for information under the FOIA and to punish the government where such opposition is unreasonable. These goals apply with equal force where an attorney litigant proceeds *pro se*." *Id.* at 1057.

In *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1366 (D.C.Cir.1977), the court held: "In light of the legislative history of section 552(a)(4)(E), a complainant, who is otherwise eligible under that section for an award of attorney fees, should not be denied those fees simply because he happens to be an attorney."

Although there are, to our knowledge, no other circuit cases directly on point, we think it helpful to consider fee requests brought under other statutes by *pro se* lawyer litigants. *Duncan v. Poythress*, 777 F.2d 1508 (11th Cir.1985), *cert. denied*, 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986), involved a request for attorney fees under 42 U.S.C. § 1988. Relying to some extent on *Cazalas, supra*, the court noted that a *pro se* attorney has to spend time and overhead to pursue the case and might not undertake the case without the hope of remuneration. *Id.* at 1512. In finding that the attorney was entitled to fees, the court pointed out that she had tried to avoid litigation. *Id.* at 1515.

*Ellis v. Cassidy*, 625 F.2d 227 (9th Cir. 1980), also involved a request for fees under 42 U.S.C. § 1988. In this case, however, the *pro se* lawyers were defendants, not plaintiffs. This weighed heavily in the court's decision awarding fees. It pointed out that the lawyers had to take time out from their practices to prepare and defend the suit against them. *Id.* at 231. The court also noted in a footnote that fees had been granted to both attorneys and laypersons in FOIA suits. *Id.* at 230 n. 2.

Finally, the Fourth Circuit denied a *pro se* lawyer fees under the Truth In Lending Act. It held:

It is axiomatic that effective legal representation is dependent not only on legal expertise, but also on detached and objective perspective. The lawyer who represents himself necessarily falls short of the latter. We do not think self-representation serves the goals of the Truth–in–Lending Act, and thus we hold that the provisions of § 1640(a)(3) will not be interpreted to allow attorney fees and expenses to plaintiffs who are attorneys and represent themselves.

*White v. Arlen Realty & Dev. Corp.*, 614 F.2d 387, 388 (4th Cir.), *cert. denied*, 447 U.S. 923, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980).

With due respect to those circuits holding otherwise, we see no good reason for treating *pro se* lawyers any differently than *pro se* laypersons. To begin with, we disagree with the Fifth Circuit that the purpose of the fee provision of FOIA is to deter and punish the government for unnecessarily withholding information, *see Cazalas*, 709 F.2d at 1057. Our reading of the Act is that "Section 552(a)(4)(E) is neither a punishment nor a reward." *Crooker v. U.S. Dep't of Justice*, 632 F.2d at 921. Moreover, it is difficult to understand how those making the decision to refuse information are punished by the payment of attorney fees out of public funds. The fees do not come out of the pockets of those who obdurately refuse to disclose. As we stated in *Crooker*, the purpose of the fee section of the Act was to eliminate the obstacle of attorney fees so that all litigants would have access to the courts to pursue their rights under FOIA. *Id.* at 920.

Nor are we impressed by the argument that a *pro se* lawyer should be awarded fees because of the time he/she must spend on the case. The inference is that the time so spent means the sacrifice of fees he/she would otherwise receive. But a lay *pro se* must also devote time to the case. If such a litigant is a professional person, such as an author, engineer, architect, etc. the time expended may also result in loss of income. Lawyers are not the only persons whose stock in trade is time and advice.

In *Crooker*, we pointed out that *pro se* lay litigants are, at times, a hindrance rather than an aid to the judicial process. 632 F.2d at 920. While this may not be as

great a problem with *pro se* lawyers, a lawyer's personal involvement in a case does have a tendency to color his/her judgment. As pointed out in *White v. Arlen Realty and Dev. Corp.*, 614 F.2d at 388, the first casualty of a lawyer representing himself/herself is objectivity. The old adage that a lawyer who represents himself has a fool for a client is rooted firmly in many, many years of experience.

One of the reasons for denying fees to a lay *pro se* is because it does not further FOIA's purposes to allow a litigant to recover for a non-performed service. *See Crooker*, 632 F.2d at 920. And, as we stated in *Crooker*, "an award of attorney fees where no services are received is more of a windfall than an incentive to pursue any disclosure rights." 632 F.2d at 921. We think the same reasoning applies to *pro se* lawyers. We agree with the Sixth Circuit that Congress did not intend "to so subsidize attorneys without clients." *Falcone v. I.R.S.*, 714 F.2d at 648.

Finally, we do not think it seemly to treat *pro se* lawyers differently than *pro se* lay litigants. Lawyers are an indispensable ingredient in our justice system. The purpose of the FOIA fee section is to encourage persons to use lawyers. We further that purpose by denying fees to all *pro se* litigants. If we make an exception for *pro se* lawyers, we not only defy the purposes of fee awards under FOIA, but also appear to be especially solicitous for the economic welfare of lawyers. This is not the type of image that enhances public respect for the bar or judiciary.

For the reasons stated, we hold that Aronson was not entitled to fees for the time he spent on the case.

AFFIRMED IN PART, REVERSED IN PART.

Remanded for recomputation of fees.

No fees or costs to be awarded under FOIA or otherwise in consequence of these appellate proceedings.