**Richard B. KAY, Plaintiff–Appellant,**

v.

**Bremer EHRLER, and The Kentucky Board of Elections, Defendants–Appellees.**

**No. 89–5297.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 9, 1990.

Decided April 13, 1990.

Richard B. Kay (argued), Jupiter, Fla., for plaintiff-appellant.

Frederic J. Cowan, Atty. Gen., David Ashley, Asst. Atty. Gen. (argued), Frankfort, Ky., for defendants-appellees.

Before: JONES and MILBURN, Circuit Judges; and BELL, District Judge.[*]

MILBURN, Circuit Judge.

The district court denied plaintiff-appellant Richard B. Kay's petition for attorney's fees on the ground that an attorney who represents himself cannot recover fees pursuant to 42 U.S.C. § 1988. For the reasons that follow, we AFFIRM.

## I.

### A.

Kay, proceeding *pro se*, initiated this action by filing a complaint and a motion for a temporary restraining order and prelimi-

nary injunction on January 12, 1988. He brought his action under the First, Fifth, Sixth, and Fourteenth Amendments and 42 U.S.C. §§ 1973, 1981, 1983, 1985 and 1988, alleging that several Kentucky statutes that govern the state's presidential preference primaries violated his constitutional rights. He requested that the district court declare Ky.Rev.Stat.Ann. §§ 118.581 and 118.611 to be unconstitutional; place his name on the ballot for the state's presidential preference primary scheduled for March 8, 1988; and order the state to refund his "candidates' deposit" of $1,000 required by section 118.611. He named Kentucky Attorney General Fred Cowan and the Kentucky Secretary of State at the time, Drexel Davis, as defendants.

On January 14, 1988, newly installed Secretary of State Bremer Ehrler notified Kay that the Kentucky Board of Elections had agreed to place his name on the Democratic primary ballot. This action rendered Kay's request for injunctive relief moot.[1]

After discovery, both Kay and the defendants moved for summary judgment. The district court referred the matter to the magistrate, who filed a report on September 13, 1988. He recommended that Ky. Rev.Stat.Ann. §§ 118.581 and 118.611 be declared unconstitutional; that the state refund Kay's deposit; and that Kay be awarded his "litigation costs," but not attorney's fees. Kay filed an objection to the denial of his petition for fees with the district court, and the defendants requested clarification of the phrase "litigation costs."

On January 19, 1989, the district court entered an order adopting the magistrate's recommendations and making additional findings of fact. The district court agreed with the defendants that Kay's "litigation costs" included only his actual court costs, and not the costs he incurred in personally traveling from Florida to Kentucky to file his pleadings. The district court also

---

[*] Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

[1.] Kay filed a second amended complaint on March 10, 1988, wherein he dropped Davis as a

defendant and named Ehrler, who replaced Davis in January 1988. He also added the Kentucky Board of Elections as a defendant.

agreed with the magistrate that under the applicable Sixth Circuit precedent, *pro se* attorney-plaintiffs may not recover attorney's fees pursuant to 42 U.S.C. § 1988. On February 22, 1989, the district court amended its order of January 19, 1989, and ordered the defendants to return Kay's deposit. Kay then filed this timely appeal.

### B.

Kay is a resident of the State of Florida, a licensed attorney, and a registered member of the Democratic Party in Palm Beach County, Florida. He announced on August 10, 1987, that he would seek the Democratic nomination for the office of President of the United States. This was at least the second time he had sought the nomination, as he was also a candidate in 1980. *See Kay v. Mills*, 490 F.Supp. 844 (E.D.Ky. 1980).

In December 1987, Kay wrote to Kentucky Secretary of State Davis, asking that his name be presented to the Board of Elections at its meeting on January 8, 1988. State election laws provided that when the board met in January, it would decide which candidates would appear on the ballot for the upcoming presidential primary.

On January 2, 1988, elections officials notified Kay that pursuant to state elections laws, the elections board had decided that candidates who wished to appear on the presidential primary ballot had to be "nationally recognized." Furthermore, the board had decided that it would deem those candidates who had been certified by the Federal Elections Commission for matching federal campaign funds to be "nationally recognized." Kay did not qualify for federal matching funds, and the board did not name him to the primary ballot.

None of this was new to Kay, who encountered similar difficulties when he sought a place on the Kentucky presidential primary ballot in April 1980. He challenged the constitutionality of Ky.Rev. Stat.Ann. § 118.580, prevailed, and the district court ordered that his name be placed on the ballot. *See Kay v. Mills*, 490 F.Supp. 844 (E.D.Ky.1980).

In 1982, the Kentucky General Assembly repealed section 118.580 and in 1986, it enacted section 118.581, which Kay challenges in this litigation. The state concedes that section 118.581 is "essentially the same statute" as the unconstitutional one it replaced.

On January 14, 1988, two days after Kay filed this action, the elections board placed his name on the primary ballot. The parties continued to engage in discovery into Kay's challenge to the election laws until August 1988.

Before the magistrate, Kay prevailed on nearly all of his claims, including his civil rights claims. Nevertheless, the magistrate explained that we had held that an attorney *pro se* litigant could not recover attorney's fees under the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E). *See Falcone v. IRS*, 714 F.2d 646, 648 (6th Cir.1983), *cert. denied*, 466 U.S. 908, 104 S.Ct. 1689, 80 L.Ed.2d 162 (1984). The magistrate concluded that "it is unlikely the Sixth Circuit would reach a different conclusion on this issue specifically under section 1988 unless it chooses to somehow distinguish the application of the reasoning in *Falcone*." Accordingly, the magistrate recommended that Kay's petition for attorney's fees be denied, and the district court so ordered.

The sole issue presented in this appeal is whether a *pro se* plaintiff who is an attorney and who prevails on a civil rights claim is entitled to attorney's fees pursuant to section 1988.

### II.

This is an appeal of the district court's conclusions of law, which are subject to de novo review. *Loudermill v. Cleveland Bd. of Educ.*, 844 F.2d 304, 308 (6th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 363, 102 L.Ed.2d 353 (1988).

### A.

It is settled law in the majority of circuits that non-attorney plaintiffs who proceed *pro se* and prevail in civil rights actions cannot recover attorney's fees under

section 1988. *See Gonzalez v. Kangas,* 814 F.2d 1411, 1412 (9th Cir.1987) and cases cited therein. This decision rests on the intent of section 1988, which was passed to ensure that litigants who prevailed on claims based upon 42 U.S.C. §§ 1981–85 could recover the costs of their attorneys' services. *See Pitts v. Vaughn,* 679 F.2d 311, 312 (3d Cir.1982); *see also* S.Rep. No. 94–1011, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5908, 5910. The courts have held that section 1988 was not intended to reward or compensate *pro se* litigants, as it "presupposes a relationship of attorney and client" that does not exist when the plaintiff proceeds *pro se. See Davis v. Parratt,* 608 F.2d 717, 718 (8th Cir.1979) (per curiam).

However, courts have seen quite a different issue when the *pro se* civil rights plaintiff was also an attorney. Four of the five courts that have addressed this issue have held that a *pro se* plaintiff-attorney can recover attorney's fees under section 1988 for representing himself. The leading case is *Duncan v. Poythress,* 777 F.2d 1508 (11th Cir.1985) (en banc), *cert. denied,* 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986), wherein the court held that an attorney who became a plaintiff in the latter stages of the litigation of a section 1983 claim could recover attorney's fees under section 1988 for the time she spent representing herself.

In *Duncan,* the court found it significant that section 1988 does not expressly bar such an award. It noted that awarding fees to *pro se* attorneys furthered several of the purposes of section 1988, including encouraging private citizens to act as private attorneys general and serve the public interest by bringing suits to vindicate civil rights. *Duncan,* 777 F.2d at 1512; *see also Hamilton v. Daley,* 777 F.2d 1207, 1211 (7th Cir.1985).

The court also cited the opportunity costs of bringing a *pro se* action as a reason to award fees. *Duncan,* 777 F.2d at 1514.

Opportunity costs consist primarily of the time and energy an attorney spends on the *pro se* case, overhead, and other fixed costs. The concept of opportunity costs rests on the assumption that the *pro se* attorney has an otherwise full load of work, and he or she would have been busily billing hours to clients but for his *pro se* work. In *Duncan* the court held that opportunity costs constitute actual, pecuniary losses incurred while vindicating constitutional and congressional policies—the precise situation that section 1988 was intended to address—and, therefore, *pro se* attorneys may recover fees under section 1988 [2].

The only reported decision to deny attorney's fees is *Lawrence v. Staats,* 586 F.Supp. 1375, 1380–81 (D.D.C.1984.) The court found no reason to distinguish between *pro se* laymen plaintiffs, who cannot recover under section 1988, and *pro se* plaintiffs who happened to be licensed to practice law. The court also rejected the opportunity costs argument on the ground that section 1988 was not intended to compensate attorneys for the opportunity costs involved in prosecuting a lawsuit, but only for those legal services that were related to providing the prevailing claims. *Id.* at 1379.

### B.

Several of the courts that have faced the issue of awarding fees to *pro se* attorneys under section 1988 have looked for guidance in decisions interpreting other federal statutory fee provisions. The majority of these interpretive decisions have involved the Freedom of Information Act, which provides in part:

(E) The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

5 U.S.C. § 552(a)(4)(E).

Nine circuits, including the Sixth Circuit, have held that *pro se* non-attorney plain-

---

**2.** Other decisions which have allowed *pro se* attorneys to recover attorney's fees under section 1988 include *Ellis v. Cassidy,* 625 F.2d 227, 230–31 (9th Cir.1980); *Shakman v. Democratic Org. of Cook County,* 634 F.Supp. 895, 901 (N.D.

Ill.1986); *Lanasa v. City of New Orleans,* 619 F.Supp. 39, 45 (E.D.La.1985); *Rybicki v. State Bd. of Elections,* 584 F.Supp. 849, 860 (N.D.Ill. 1984).

tiffs cannot recover attorney's fees under the FOIA. *See Aronson v. United States Dep't of Hous. and Urban Dev.,* 866 F.2d 1, 4 (1st Cir.1989) and cases cited therein.

Four courts have considered whether *pro se* plaintiff-attorneys may recover fees under the FOIA. This circuit and the First Circuit have held that they cannot; the D.C. and Fifth Circuits have held they can. *Compare Aronson,* 866 F.2d at 4–5 and *Falcone v. IRS,* 714 F.2d 646, 648 (6th Cir.1983), *cert. denied,* 466 U.S. 908, 104 S.Ct. 1689, 80 L.Ed.2d 162 (1984) *with Cazalas v. United States Dep't of Justice,* 709 F.2d 1051, 1057 (5th Cir.1983), and *Cox v. United States Dep't of Justice,* 601 F.2d 1, 5–6 (D.C.Cir.1979).

We held in *Falcone* that fees should not be awarded because *pro se* plaintiffs who are also attorneys do not incur the type of legal costs contemplated by the statutory provision for fees. *Falcone,* 714 F.2d at 647. In reaching this holding, we rejected the proposition that opportunity costs constitute actual pecuniary losses for which litigants should be compensated. *Id.* at 648.

We explained in *Falcone* that one purpose of a statutory provision for attorney's fees is "to encourage potential claimant to seek legal advice before commencing litigation," with the hope that "the retention of legal counsel might help to prevent unnecessary litigation." *Id.* at 647. However, this filtering does not occur where the attorney represents himself. In reaching our holding, we also cited the concern that awarding fees to a *pro se* attorney would lead to the establishment of a "cottage industry" of inactive lawyers who would support themselves on statutory fee awards for self-generated litigation. We explained that "[w]e do not believe that Congress intended to so subsidize attorneys without clients." *Id.* at 648 (footnote omitted). We concluded that "[t]he fortuitous fact that [a prevailing] FOIA plaintiff is also an attorney makes no difference. Both a client and an attorney are necessary

ingredients for an award of fees in a FOIA case."[3] *Id.*

## C.

The magistrate concluded in this case that Kay's petition for attorney's fees fell within *Falcone* and denied it. We agree, based upon our rejection in *Falcone* of the proposition that opportunity costs constitute actual pecuniary losses for which a *pro se* attorney deserves compensation. As we stated in *Falcone,* "no legal costs are incurred" by *pro se* plaintiffs who are also attorneys. *Falcone,* 714 F.2d at 647. Assuming that Kay spent hours prosecuting this case that he could have billed to clients, he has only failed to add to the wealth of his private practice. He has not incurred any expenses for legal representation, and, therefore, he cannot recover under section 1988.

*Falcone* is a FOIA case, but that does not distinguish it from this appeal. Were we to hold that Kay's opportunity costs constituted pecuniary losses, when we had previously held that *Falcone's* opportunity costs were not, we would begin classifying opportunity costs as legal expenses based upon the substance of the *pro se* claim. We find no authority for awarding fees based on such a system.

There are several other reasons why Kay should not recover fees under section 1988. First, while *Duncan* emphasized the lack of an expressed prohibition against awarding fees to *pro se* attorneys in section 1988, we held in *Falcone* that the "plain language" of a statutory provision for attorney's fees assumes a paying relationship between an attorney and a client. *Falcone,* 714 F.2d at 648.

Second, while some courts have found the purposes of section 1988 are fulfilled when an attorney "hires himself" to litigate a civil rights claim, we stressed in *Falcone* that where the advocate is also the claimant, there is no filtering of meritless claims by objective attorneys, and, there-

---

**3.** The First Circuit found our arguments in *Falcone* to be persuasive and followed them in

1989. *See Aronson,* 866 F.2d at 6.

fore, one of the major objectives of the statutory provision for attorney's fees was frustrated. *Id.* at 647. Additionally, we held in *Falcone* that the fact that the public might benefit from a *pro se* attorney's action did not make him more deserving of fees than a *pro se* non-attorney plaintiff. *Id.* at 648.

Kay argues that he is entitled to the fees because the commonwealth of Kentucky has engaged in the vexatious modification of its election laws. He points out that he brought an identical action in 1980, and won, and has had to repeat that effort here. While we cannot condone the Commonwealth's conduct in this case, attorney's fees, as Kay concedes, under section 1988 are not awarded as penalties or sanctions.

## III.

We held in *Falcone* that when an attorney represents himself, he does not incur any legal costs or pecuniary losses that constitute "attorney's fees." Though *Falcone* was an FOIA case, we hold that its rationale applies to section 1988 as well. It is clear to us that the *pro se* plaintiff-attorneys in this case vindicated a constitutional right, the substance of which is clearly distinguishable from the substance of the matter in *Falcone*. Nevertheless, for the reasons we have explained, we feel bound to follow the rationale of *Falcone* in this case. Accordingly, for the foregoing reasons, the judgment of the district court is AFFIRMED.

JONES, Circuit Judge, dissenting.

Because I believe that *Falcone v. IRS*, 714 F.2d 646 (6th Cir.1983) is distinguishable, I respectfully dissent.

The *Falcone* court held that an attorney litigant could not recover attorney's fees for successful release of documents under the Freedom of Information Act (FOIA) for three reasons. First, "[t]he award of attorney's fees to successful FOIA plaintiffs was intended to relieve plaintiffs with legitimate claims of the burden of legal costs; it was not intended as a reward for successful claimants or as a penalty against

the government." *Id.* at 647. "A second reason [in *Falcone*] for denying fees to *pro se* FOIA plaintiffs is that the provision for attorney's fees was intended to encourage potential claimants to seek legal advice.... It was hoped that retention of legal counsel might help prevent unnecessary litigation. An attorney who represents himself in litigation may have the necessary legal expertise but is unlikely to have the 'detached and objective perspective' necessary to fulfill the aims of the Act." *Id.* The final rationale of *Falcone* was that providing attorney's fees to attorney-litigants would create a "cottage industry" for claimants using the Act solely as a way to generate fees rather than to vindicate personal claims. The *Falcone* court reasoned that Congress did not intend to "subsidize attorneys without clients." *Id.* at 648.

The majority reads *Falcone* as a rejection of "the proposition that opportunity costs constitute actual pecuniary losses for which litigants should be compensated," and therefore holds that *Falcone* precludes the award of attorney's fees in the instant case. However, a close reading of *Falcone* indicates that it did not explicitly reject the opportunity costs rationale. Instead, the *Falcone* court noted that "[a]lthough such a rule may negate the fear of inactive attorneys bringing FOIA claims solely to generate fees, it would produce difficult problems of proof. In any event, the rule is unsatisfactory because it does not address the other reasons which have led us to deny fees to *pro se* litigants." *Id.* That the opportunity costs rule does not address the first two concerns of the *Falcone* court is not a rejection of the argument.

The rationale of *Falcone* is inapplicable to section 1988 suits for attorney's fees. The purpose of section 1988 is to encourage lawyers "to search for violations of constitutional and statutory rights and then seek to vindicate those rights...." *Duncan v. Poythress*, 777 F.2d 1508, 1515 (11th Cir. 1985), *cert. denied*, 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986). In contrast to the FOIA, section 1988 not only relieves the burden of litigation, but also rewards

successful litigants for vindicating a constitutional right. Moreover, because the goal of section 1988 is to promote lawsuits that protect civil rights, the concern with "objective" lawsuits and a cottage industry of fee-generating lawyers is not as great as with the FOIA, where the litigation secures the release of individual documents from the government. I do not challenge *Falcone*'s reading of the statutory purposes underlying the FOIA. However, I believe that these purposes are not present to the same extent, if at all, under section 1988. As such, I would allow Richard Kay, plaintiff-appellant, to recover attorney's fees equivalent to the opportunity cost of handling other litigation.