**Edward C. McREADY, Appellant,**

**v.**

**DEPARTMENT OF CONSUMER
& REGULATORY AFFAIRS,
et al., Appellees.**

**No. 91–CV–884.**

District of Columbia Court of Appeals.

Argued June 2, 1992.
Decided Nov. 20, 1992.
As Amended Nunc Pro Tunc
Jan. 11, 1993.

Edward C. McReady, pro se.

Lutz Alexander Prager, Asst. Deputy Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Robert J. Harlan, Jr., Asst. Corp. Counsel, Washington, DC, were on the brief, for appellees.

Before FERREN, SCHWELB and KING, Associate Judges.

KING, Associate Judge:

Appellant appeals a ruling denying him attorney fees and costs and other relief in an action seeking documents pursuant to the District of Columbia Freedom of Information Act (hereinafter "DC FOIA"). The following issues are presented in this appeal: (1) whether a prevailing *pro se* attorney is eligible to receive attorney fees and costs, (2) whether appellant prevailed in whole or in part in his action in the trial court, and (3) whether the trial judge erred in denying appellant's various motions for sanctions and contempt. We conclude that: (1) under the DC FOIA, a prevailing *pro se* attorney * is entitled to costs but not attorney fees, (2) the trial judge did not err in finding appellant did not prevail with respect to some of the documents sought, (3) a remand is necessary to permit the trial judge to determine whether appellant prevailed, in part, with respect to other documents, which would entitle him to receive costs related to those documents, and (4) the trial judge did not abuse her discretion in denying appellant's requests for sanctions and contempt.

I.

This matter began in 1986 when both appellant, who is an attorney and an accountant, and another accountant (Moss) were employed at a local university. Appellant was terminated from that employment. Believing Moss was responsible for that action, appellant filed a complaint with the Board of Accounting ("the Board") of the District of Columbia Department of

---

* In *Donahue v. Thomas,* 618 A.2d 601 (D.C.1992), also decided this date, another division of this court holds that a *pro se* non-attorney plaintiff who prevails in a DC FOIA action is not eligible for an award of attorney fees.

Consumer and Regulatory Affairs ("DCCRA"), claiming various violations of District accounting laws and regulations. The Board ultimately requested that the complaint against Moss be pursued, but the Office of the Corporation Counsel declined to do so. Appellant also filed a civil action in the Superior Court against the university because of the termination.

In July 1987, appellant submitted a Freedom of Information Act ("FOIA") request to DCCRA for documents relating to the investigation of Moss. In response, a small portion of the documents requested were provided. In September 1987, appellant submitted a second FOIA request seeking all documents relating to the Board's investigation of Moss. Production of those documents was denied on privacy grounds in January 1988.

In mid–1988 the Board requested that the Corporation Counsel reconsider its decision not to proceed with disciplinary action against Moss. The Corporation Counsel responded that the Superior Court had issued a protective order, in the civil action appellant had brought against the university, designating certain documents involved in that litigation as confidential. The Corporation Counsel concluded that some of those documents would be needed for any administrative action against Moss, and that, therefore, any disciplinary action would have to be deferred until after resolution of the civil suit when it was expected that the documents would become available.

In the meantime, the administrative appeal of the denial of the appellant's FOIA request had been referred by the Mayor to Dr. Herbert Reid, Sr., for resolution.[1] In August 1988, Dr. Reid directed that the

undisclosed records be provided to him for review.

In November 1988, appellant filed the instant action in the Superior Court seeking the documents in question. The trial judge granted appellee's motion to stay the proceeding pending the outcome of the review by Dr. Reid. In April 1989, Dr. Reid issued a comprehensive Memorandum of Decision ("M.O.D.") in which he determined that nine ("exemption (2) documents") of the twenty-eight requested documents were exempt from disclosure for personal privacy reasons because of the ongoing investigation of Moss.[2] The remaining documents were ordered released.

In September 1989, appellant made a third FOIA request seeking all documents that came into existence after August 1988, i.e., any documents created after the documents that were the subject of Dr. Reid's M.O.D. All but one of those documents were made available. In December 1989, appellant filed a fourth FOIA request with the Board for documents relating to events involving Moss that occurred in April 1989.

In December 1989, the District filed a motion for summary judgment in this case defending the withholding of the exemption (2) documents on privacy grounds. It offered to submit the documents for *in camera* review, and the trial judge agreed. After examining the documents, Judge Huhn granted the District's motion for judgment and placed the documents under seal in an order dated March 12, 1990. A notice of appeal from that determination was filed and the case was designated appeal No. 90–445.

In July 1990, appellant filed two new FOIA requests seeking other documents. A separate action has been filed in the Superior Court with respect to these re-

---

1. Dr. Reid, the mayor's legal counsel, was responsible for deciding DC FOIA appeals.

2. The documents were withheld under an exemption which provides:
   (a) The following matters may be exempt from disclosure under the provision of this subchapter:
   \* \* \* \* \* \*
   (2) Information of a personal nature where the public disclosure thereof would constitute

a clearly unwarranted invasion of personal privacy[.]
D.C.Code § 1–1524(a)(2) (1987).

quests. In July 1990, DCCRA responded to the December 1989 and the July 1990 requests by making various documents available to appellant. Included with the material provided were the exemption (2) documents, previously denied to appellant in this case, which had been placed under seal by the trial judge. The documents were released by DCCRA's new FOIA coordinator, who was unaware that this action seeking those documents was pending. The documents were released because the investigation of Moss had been completed resulting in his public censure.

Thereafter, in February 1991, the District moved this court to remand No. 90–445 to the trial court. That motion was granted and the trial judge then conducted a hearing to determine whether the case had become moot. The trial judge found the case was moot because all of the documents previously withheld had been provided in response to new DC FOIA requests.

Earlier appellant had moved for Rule 11 sanctions, Super.Ct.Civ.R. 11, claiming that counsel for the District had violated the rule in filing two pleadings, *viz,* a motion for summary judgment and the motion to dismiss. In addition, appellant sought contempt sanctions against those responsible for releasing the documents on the grounds that releasing them violated the March 12, 1990 sealing order. Finally, in a separate motion, appellant moved for Rule 11 sanctions on the grounds that DCCRA had previously failed to submit all required documents to the trial court for *in camera* inspection. The trial judge denied all of the sanction motions.[3]

After further briefing the trial judge ruled that appellant, a *pro se* attorney, was not entitled to receive attorney fees under the DC FOIA. She also concluded that since appellant had not prevailed, within the meaning of the statute, he was not entitled to attorney fees on that ground as well. For the same reason he was not entitled to an award of costs. This appeal followed.

## II.

The question of whether a *pro se* attorney who prevails in a DC FOIA action is eligible for an award of attorney fees has never been decided by this court. The provision authorizing an award of fees is set forth in the margin.[4] The trial judge concluded, relying upon *Kay v. Ehrler,* — U.S. ——, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991), that an unrepresented litigant, even one who is an attorney, is not eligible to receive such fees. We agree.

In *Kay* the Supreme Court unanimously held that an attorney, acting *pro se,* who prevailed as a litigant in a civil rights action was not eligible for an award of attorney fees under The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1988).[5] *Kay, supra,* at ——, 111 S.Ct. at 1437–38. In so ruling, the Court affirmed the Sixth Circuit which had relied upon *Falcone v. Internal Revenue Service,* 714 F.2d 646 (6th Cir.1983), *cert. denied,* 466 U.S. 908, 104 S.Ct. 1689, 80 L.Ed.2d 162 (1984), which denied a fee award to an attorney acting *pro se* in a federal Freedom of Information Act ("federal FOIA") case.[6]

> In any action or proceeding to enforce a provision of [specified civil rights statutes], the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs.
> 42 U.S.C. § 1988 (1988).

**3.** We are satisfied that the trial judge did not abuse her discretion in finding no Rule 11 violations and in denying all sanction requests. *See Stansel v. American Security Bank,* 547 A.2d 990, 995–96 (D.C.1988), *cert. denied,* 490 U.S. 1021, 109 S.Ct. 1746, 104 L.Ed.2d 183 (1989).

**4.** The attorney fees and costs authorization provides:
> (c) If a person seeking the right to inspect or to receive a copy of a public record prevails in whole or in part in such suit, he or she may be awarded reasonable attorney fees and other costs of litigation.
> D.C.Code § 1–1527(c) (1992 Repl.).

**5.** The Act provides in pertinent part:

**6.** The federal FOIA fee award statute provides:
> The court may assess against any party reasonable attorney fees and other litigation costs reasonably incurred by any other party who substantially prevails in any action brought in accordance with the provisions of this subsection....
> 5 U.S.C. § 552b(i) (1988).

In *Kay* the Supreme Court made the following observation with respect to *Falcone:*

> The Court of Appeals [*in Falcone*] reasoned that attorney's fees [to an attorney acting *pro se*] in FOIA actions were inappropriate because the award was intended "to relieve plaintiffs with legitimate claims of the burden of legal costs" and "to encourage potential claimants to seek legal advice before commencing litigation." The court relied on the fact that "[a]n attorney who represents himself in litigation may have the necessary legal expertise but is unlikely to have the 'detached and objective perspective' necessary to fulfill the aims of the Act."

*Kay, supra,* —— U.S. at —— n. 4, 111 S.Ct. at 1436 n. 4 (citations omitted). In denying a fee award in the case before it, the Supreme Court expressed a view similar to that expressed by the Sixth Circuit in *Falcone* when it concluded that:

> Even a skilled lawyer who represents himself is at a disadvantage in contested litigation. Ethical considerations may make it inappropriate for him to appear as a witness. He is deprived of the judgment of an independent third party in framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witnesses, formulating legal arguments, and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom. The adage that "a lawyer who represents himself has a fool for a client" is the product of years of experience by seasoned litigators.

> A rule that authorizes awards of counsel fees to *pro se* litigants—even if limited to those who are members of the bar—would create a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his own behalf. The statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case.

*Id.* at ——, 111 S.Ct. at 1438 (footnotes omitted). We believe that reasoning should apply in this case as well.

■ In reaching that conclusion we endorse the Sixth Circuit's observation that an attorney representing himself or herself is not likely to be sufficiently objective or to maintain the detached perspective necessary to fulfill the aims of the statute. *Falcone, supra,* 714 F.2d at 647. The federal FOIA was intended to encourage those seeking documents to obtain legal advice before proceeding with litigation in the hope that unnecessary litigation might be either avoided or maintained within reasonable bounds. *Id.* These desirable goals cannot be realized if attorneys proceeding *pro se,* rather than obtaining representation by another attorney, are also eligible to receive fee awards. We see no reason why the rationale underlying the federal FOIA fee provision should not apply to DC FOIA proceedings as well.

■ In sum, we note that the fee award provision of the DC FOIA is patterned after, and substantially the same as, that contained in the federal FOIA. *See Dunhill v. Director, District of Columbia Department of Transportation,* 416 A.2d 244, 247 n. 6 (D.C.1980). We also note that the Sixth Circuit in *Falcone* held that attorneys, proceeding *pro se* in federal FOIA litigation, are not eligible to receive attorney fee awards. Finally, as we observed above, the Supreme Court in *Kay* endorsed the principles underlying *Falcone* when it held that the fee awards were not available to *pro se* litigants in civil rights cases. We conclude that, in the absence of any indication of a contrary intent by the legislature in enacting the DC FOIA, reason and common sense call for application of the rule of *Falcone* and *Kay* in DC FOIA actions.

Before turning to an examination of possible expressions of legislative intent on this point, we think it appropriate to address some aspects of the dissenting opinion filed in this case. The dissent places great reliance upon *Alexander v. District of Columbia Rental Housing Commission,* 542 A.2d 359 (D.C.1988) (per curiam), where we upheld the Rental Housing Com-

mission's conclusion that a prevailing attorney appearing *pro se* in proceedings before it, was eligible for an attorney fee award under the Rental Housing Act of 1980 ("Rental Housing Act"). The rationale of *Alexander* was based entirely upon the opinion of the Eleventh Circuit in *Duncan v. Poythress*, 777 F.2d 1508 (11th Cir.1985) (en banc), *cert. denied*, 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986), which held that attorneys proceeding *pro se* are eligible to receive attorney fee awards under 42 U.S.C. § 1988.[7] The Supreme Court unanimously reached a directly contrary conclusion six years later when it decided *Kay*—a result that effectively overrules *Duncan.*

*Kay*, of course, had not been decided when we considered *Alexander*. In *Alexander*, both the Rental Housing Commission and this court relied solely[8] upon *Duncan*—a case that, in light of *Kay's* contrary holding, now has no precedential value at all. We doubt that *Alexander* would have been decided the way it was had *Kay* been available for consideration by the Court. Under these circumstances, we do not believe it is appropriate for this court to apply *Alexander's* construction of the Rental Housing Act to the fee award provision of the DC FOIA.

Our dissenting colleague also maintains that we should not adopt the reasoning of *Kay*, which interprets a civil rights provision, since Congress intended that the federal FOIA fee award provision would provide broader coverage than that provided under § 1988. In short, the dissent concludes that the federal FOIA was intended to encourage litigation that benefitted both the public at large, as well as the individual litigant, whereas § 1988 was designed primarily to provide victims of civil rights violations with a means of redress. This ignores the oft repeated reminder that when a civil rights plaintiff seeks relief, he or she does so not for himself or herself alone "but also as a 'private attorney general,' vindicating a policy Congress considered of the highest priority." *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968); *accord, Albemarle Paper Company v. Moody*, 422 U.S. 405, 415, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280 (1975); *Northcross v. Board of Education of the Memphis City Schools*, 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973). In light of both that consideration and *Kay's* heavy reliance upon the holding of *Falcone*, a federal FOIA case, we think it most unlikely that the Supreme Court would adopt an interpretation of a fee award provision providing broader eligibility for FOIA cases than for civil rights cases.

As noted above, we conclude that there are sound reasons for adopting the fee awards rulings in *Falcone* and *Kay* in DC FOIA actions. We have carefully examined the legislative history of that provision and have found no expression of a contrary intent on the part of the Council of the District of Columbia ("Council") when it was enacted. In *Kay* the Supreme Court observed that the word "attorney" is one that "assumes an agency relationship, and it seems likely that Congress contemplated an attorney-client relationship as the predicate for an award...." *Kay, supra*, ―― U.S. at ――, 111 S.Ct. at 1437 (footnotes omitted). There is no reason or basis for

---

7. Our dissenting colleague also observes that the *Alexander* court could have relied on cases other than *Duncan* as a basis for its holding. *See, e.g., Cazalas v. United States Department of Justice*, 709 F.2d 1051 (5th Cir.1983); *Cuneo v. Rumsfeld*, 180 U.S.App.D.C. 184, 553 F.2d 1360 (1977). Those cases permitted fee awards to *pro se* attorneys in federal FOIA actions. *Cazalas*, however, relied principally upon *Cuneo; Cuneo*, in turn, relied upon decisions awarding fees in civil rights cases. *See, e.g., Clark v. American Marine Corp.*, 320 F.Supp. 709 (E.D.La.), *aff'd.* 437 F.2d 959 (5th Cir.1971). The holding of *Clark*, as with *Duncan*, was effectively overruled by *Kay*. Thus, reliance upon *Cazalas* or *Cuneo* by this court in *Alexander* would have been equally unavailing.

8. Only one other authority was even cited by this court. *Ellis v. Cassidy*, 625 F.2d 227 (9th Cir.1980). That case has no applicability here, however, since it deals with fee awards in favor of prevailing *defendants* under the "frivolous, unreasonable or groundless" standard set forth in *Christiansburg Garment Company v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 700–01, 54 L.Ed.2d 648 (1978).

concluding that the Council was of a different view when it enacted DC FOIA.

Furthermore, appellant concedes, as we noted earlier, that the DC FOIA was patterned after the federal FOIA. *See Dunhill v. D.C. Department of Corrections, supra,* 416 A.2d at 247 n. 6. He correctly argues, that this court has adopted a rule of statutory construction which provides that when a local law is borrowed from a federal statute, it is presumed that judicial construction of the federal statute is borrowed as well. *See Hughes v. District of Columbia Department of Employment Services,* 498 A.2d 567, 571 n. 8 (D.C.1985). Appellant, however, cannot point to any judicial interpretation of the federal FOIA known to and relied upon by the Council when it enacted DC FOIA.

Appellant does cite the decision of a federal District Court judge that was decided on September 3, 1976, holding that a *pro se* plaintiff who was not an attorney was eligible to receive fees under the federal FOIA. That decision was eventually published in the FEDERAL RULES DECISIONS on some unknown date in 1977.[9] *See Holly v. Acree,* 72 F.R.D. 115 (D.D.C.1976). It was affirmed without opinion on December 5, 1977. *Holly v. Chasen,* 186 U.S.App.D.C. 329, 569 F.2d 160 (1977). We note that the Council adopted DC FOIA after first and second readings in September and October of 1976, and the provision was signed into law on November 19, 1976. D.C.Code § 1–1521 (1992 Repl.) (legislative history of Law 1–96). After the required layover in Congress, it became effective on March 29, 1977. 23 D.C.Reg. 9532b (1977). Finally, in March 1977, the United States Court of Appeals decided *Cuneo v. Rumsfeld, supra* note 7, 180 U.S.App.D.C. at 190, 553 F.2d at 1366, which held, relying on *Holly,* that a *pro se* attorney was also eligible to receive fees under the federal FOIA.

■ When the provisions of a federal statute are substantially adopted by the Council, it is presumed that the Council intends to adopt the known and settled judicial interpretations of that statute as well. *Hartford Accident and Indemnity*

*Company v. Hoage,* 66 App.D.C. 154, 156, 85 F.2d 411, 413 (1936); *Hughes, supra,* 498 A.2d at 571 n. 8. In order for us to conclude, however, that the legislature believed it was adopting the borrowed legislation, together with its judicial interpretations, there must be some degree of likelihood that the Council was, in fact, aware of the judicial interpretation in question. *Office of People's Counsel v. Public Service Commission,* 477 A.2d 1079, 1091 (D.C. 1984).

*Cuneo,* of course, had not even been decided when the Council and Mayor gave their approval of DC FOIA and, although *Holly* had been decided, there is no indication that it had been published or that the Council or Mayor knew of its existence. Moreover, *Holly* was a trial court opinion, and we have observed that "with respect to borrowed statutes ... only the decisions of the court of last resort are normally adopted with the statute." *Lenaerts v. District of Columbia Department of Employment Services,* 545 A.2d 1234, 1238 n. 9 (D.C.1988) (citations and quotation marks omitted). In short, we cannot say that when the Council enacted the DC FOIA it understood that it was adopting the interpretations set out in *Holly* and *Cuneo.* We conclude, therefore, there being no legislative intent to the contrary, the rule expressed in *Kay* should be followed. Accordingly, we hold that appellant, an attorney proceeding *pro se* in this DC FOIA action, is not eligible to receive an attorney fee award.

III.

■ Having concluded that appellant is not eligible for an attorney fee award, we would ordinarily have no reason to consider whether appellant prevailed in the matter in the trial court. Appellant, however, is seeking an award of costs as well as attorney fees, and such an award may be made only if he has prevailed on the points for which he seeks costs. See note 3, *supra.*

■ We are satisfied that appellant did not prevail in this matter, at least with

---

**9.** The title page of the bound volume indicates    the date of "1977."

respect to the exemption (2) documents, for the reasons stated by the trial judge, who properly recognized that appellant cannot be considered to have prevailed unless he can show a "causal nexus ... between the action [brought in court] and the agency's surrender of the information." *Cox v United States Department of Justice*, 195 U.S.App.D.C. 189, 194, 601 F.2d 1, 6 (1979) (citation omitted). The trial judge found that the documents in question were released pursuant to a new FOIA request unrelated to the action in court. Indeed, when the documents were released, the trial judge had already upheld the agency's basis for withholding the documents, and had ordered that they not be produced. The finding by the trial judge, that release of the exemption (2) documents was not prompted by the law suit, has ample support in the record and we will not disturb it. We conclude, therefore, that appellant is not entitled to receive costs related to those documents.

■ Appellant also contends that he prevailed with respect to the documents, other than the exemption (2) documents, that were in fact provided to him after the filing of the suit. The trial judge made no finding with respect to those documents and we remand for a determination of whether appellant is entitled to an award of costs with respect to them.

For the reasons stated, the judgment of the trial court is affirmed in all respects; and the matter is remanded for a determination of whether appellant is entitled to receive costs related to documents, other than the exemption (2) documents, that were provided to him after the litigation was commenced.

*So Ordered.*

SCHWELB, Associate Judge, with whom KING, Associate Judge, joins, concurring:

I join Judge King's opinion for the court. I write separately, however, to explain why McReady's contention that the Council of the District of Columbia "adopted" a judicial construction of the D.C. FOIA which would entitle him to recover counsel fees in this case is entirely specious.

Contrary to McReady's position, there is no generalized doctrine that when the Council, in enacting a local law, has borrowed the language of a federal statute, it is presumed also to have approved the statute's judicial construction even where, as here, there is no evidence that the legislature knew about that construction or intended to adopt it. The actual rule, one of long standing, was more precisely articulated by Justice Story, writing for the Supreme Court almost a century and three quarters ago, as follows:

> It is doubtless true, as has been suggested at the bar, that where English statutes ... have been adopted into our own legislation, *the known and settled construction* of those statutes by courts of law, has been considered as silently incorporated into the acts, or has been received with all the weight of authority.

*Pennock & Sellers v. Dialogue*, 27 U.S. (2 Pet.) 1, 18, 7 L.Ed. 327 (1829) (emphasis added).

The emphasized words are critical. Seventy years after *Pennock*, the Court reiterated the same doctrine, with the same indispensable qualification, in *Capital Traction Co. v. Hof*, 174 U.S. 1, 36, 19 S.Ct. 580, 594, 43 L.Ed. 873 (1899):

> By a familiar canon of interpretation, heretofore applied by this court, whenever Congress, in legislating for the District of Columbia, has borrowed from the statutes of a State provisions which had received in that State a *known and settled construction* before their enactment by Congress, that construction must be deemed to have been adopted by Congress together with the text which it expounded, and the provisions must be construed as they were understood at the time in the State.

(Emphasis added; citations omitted).

Like the Supreme Court, the courts of this jurisdiction apply the presumption which McReady invokes here only in situations where the judicial construction sought to be borrowed is both known and settled. *Hartford Accident & Indemnity Co. v. Hoage*, 66 App.D.C. 154, 156, 85 F.2d 411,

413 (1936) (quoting *Hof*); *Lenaerts v. District of Columbia Dep't of Empl. Servs.*, 545 A.2d 1234, 1238 (D.C.1988); *see also In re Adoption of a Minor*, 79 U.S.App.D.C. 191, 194 & n. 9, 144 F.2d 644, 647 & n. 9 (1944). As this court explained in *Lenaerts* (quoting, *inter alia, Hof* and *Hoage*), the presumption that an interpretation of a statute has been approved by a borrowing legislature "operates only where the judicial interpretation of the existing law is firm," and therefore applies only to the decisions of courts of last resort. 545 A.2d at 1238 & n. 9 (citations omitted).[1]

In the present case, there was no known or settled judicial construction of the federal FOIA for the Council to adopt. With what can most charitably be described as considerable chutzpah, McReady claims that

> since, at the time of the enactment of the D.C. FOIA, *i.e.* March 29, 1992, there was only one federal FOIA [decision] as it applied to *pro se* plaintiff/attorneys, *i.e. Cuneo v. Rumsfeld*, [180 U.S.App. D.C. 184, 553 F.2d 1360 (1977) ], it must be presumed, as a well established rule of statutory construction, that the D.C. Government intended for the *Cuneo* principles to be applied to the D.C. FOIA fee shifting provision.

In fact, as Judge King points out in the lead opinion, the Council had adopted the District's FOIA during the fall of 1976, half a year before March 24, 1977—the date of the *Cuneo* decision—and the Mayor signed the legislation on November 19, 1976, four months before *Cuneo*.[2] *Cuneo* thus did not exist at all when the District government considered our FOIA, and was certainly not a "known" or "settled" construction of the federal statute.

McReady also relies on *Holly v. Acree*, 72 F.R.D. 115 (D.D.C.1976), *aff'd. mem.*, 186 U.S.App.D.C. 329, 569 F.2d 160 (1977). The trial judge's decision in *Holly* was issued on September 3, 1976, less than two weeks before the Council's first reading of the District's FOIA. There is no indication, however, that the members of the Council knew or could have known about it; *Holly* was not published in the Federal Rules Decisions until the following year.[3] In any event, the trial court decision in *Holly* was not issued by a court of last resort, and does not constitute the kind of "firm" or "settled" construction required by our cases if the presumption proposed by McReady is to apply. *Lenaerts, supra,* 545 A.2d at 1238.

The question remains whether, even though the Council demonstrably did not adopt *Cuneo* and *Holly* in enacting the District's FOIA, we should nevertheless follow the reasoning of these decisions in construing our statute. *See Washington Post Co. v. Minority Business Opportunity Comm'n*, 560 A.2d 517, 521 n. 5 (D.C. 1989) (case law interpreting the federal FOIA is to be treated as instructive authority with respect to District's FOIA). The answer to that question is no; after the Supreme Court's decision in *Kay v. Ehrler*, — U.S. —, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991), *Cuneo* and *Holly* are just about as dead as the proverbial doornail. Although *Kay* was decided under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, and not under the federal FOIA, the Supreme Court unanimously endorsed the reasoning of federal appellate decisions irreconcilable with *Cuneo*. At —, 111 S.Ct. at 1436–38. In *Cuneo*, on the other hand, the court relied heavily on decisions awarding counsel fees in civil

---

1. The court quoted *United States v. Raynor*, 302 U.S. 540, 551–52, 58 S.Ct. 353, 358, 82 L.Ed. 413 (1938) for the proposition that "[o]ne [circuit court] decision construing an act ... does not approach the dignity of a well settled interpretation"). 545 A.2d at 1238.

2. McReady represents in his brief that "[t]he D.C. FOIA was passed into law effective March 29, 1977." This is, at best, a half-truth; the District government completed its action regarding the statute in November 1976, and its effec-

tive date was delayed to March 29, 1977 only as a result of the required Congressional layover. Unfortunately, McReady's brief does not reveal this history and is so phrased as to convey the entirely misleading impression that the members of the Council were aware of *Cuneo* when they passed the FOIA legislation.

3. An examination of the relevant volumes of the Daily Washington Law Reporter reveals that *Holly* was not reported in that publication at all.

rights cases when it ruled favorably to the plaintiff in an FOIA case, *see Cuneo,* 180 U.S.App.D.C. at 190–91, 553 F.2d at 1366–67; the decision in *Kay* destroyed the basis for such reliance.

In any event, the Supreme Court's emphasis on encouraging plaintiffs to employ independent counsel and on discouraging them from representing themselves—Justice Stevens cited with approval the old adage that "a lawyer who represents himself has a fool for a client, *see Kay, supra,* —— U.S. at ——, 111 S.Ct. at 1438—applies to freedom of information cases just as readily as it applies to civil rights disputes. Indeed, one hopes that if McReady had employed counsel with the "detached and objective perspective" contemplated by the Court, *id.* at ——, 111 S.Ct. at 1436 n. 4, the sequence of events relating to the decision in *Cuneo* and the Council's consideration of our FOIA would have been set forth with a greater measure of candor in McReady's presentation to this court.

FERREN, Associate Judge, dissenting:

The majority decides this case—a Freedom of Information Act case—on the basis of *Kay v. Ehrler,* —— U.S. ——, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991), a civil rights case. In *Kay,* the Supreme Court held, as a matter of law, that under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, the court may not award an attorney fee to a prevailing *pro se* attorney-plaintiff. I respectfully dissent from the majority's reliance on *Kay* because fee-shifting provisions under a freedom of information act—not addressed in *Kay*—have an enforcement purpose that justifies, indeed invites, attorney fee awards to prevailing attorney-plaintiffs who litigate *pro se.* "The history, language, and purpose of the Freedom of Information Act differ significantly from those of the Civil Rights

statutes; those differences often render decisions under one of the statutes inapposite to cases arising under the other." *Cofield v. City of Atlanta,* 648 F.2d 986, 988 (5th Cir.1981) (footnote omitted).

### I.

Neither the attorney fees provision of the District of Columbia Freedom of Information Act, D.C.Code §§ 1–1521 to –1529 (1987) (District FOIA), nor the Act's legislative history [1] states explicitly whether the Council of the District of Columbia intended to allow attorney fees for *pro se* attorney-plaintiffs in FOIA cases. The legislative history of the District FOIA does, however, make it quite clear that the attorney fees provision was intended as an enforcement mechanism that would not only enable citizens to seek the release of information wrongfully withheld but also "encourage" them to do so:

The Act ... provides ... mechanisms for administering and *enforcing* its provisions and for assuring that right of the public to obtain information regarding the affairs of government and the actions of those persons who represent the public. Provisions in Section 7 will expedite the *enforcement* of the Act and free the courts from prior actions of agencies and determinations by the Corporation Counsel. Provisions in Section 7(D) *encourage citizens to seek the release of information wrongfully with[h]eld by providing the award of attorney fees.*[2]

This enforcement purpose distinguishes the attorney fees provision of the District FOIA, D.C.Code § 1–1527(c), from the comparable civil rights attorney fees provision, 42 U.S.C. § 1988, rendering the Supreme Court's analysis in *Kay* inapplicable to the case before us. Given that the purpose of § 1–1527(c) is to "encourage" citizens to enforce the Act, it makes no sense to deny

---

1. *See* Memorandum of Committee on Government Operations to Members of the District of Columbia Council with Regard to Bill No. 1–119, "The Freedom of Information Act of 1975" (July 23, 1975); Report of Committee on the Judiciary and Criminal Law to District of Columbia Council on Bill No. 1–119, D.C. Freedom of Information Act of 1975 (Sept. 1, 1976).

2. Memorandum of Committee on Government Operations, *supra* note 1, at 8 (emphasis added). *See also* Report of Committee on the Judiciary and Criminal Law, *supra* note 1, at 1 (emphasis added): "this bill aims at providing the citizens of the District of Columbia with a *mechanism for enforcing* their right of access to certain government records."

fee awards to *pro se* attorney-plaintiffs under the District FOIA and thereby penalize them simply because they failed to hire another lawyer to argue their claims.

Further support for this interpretation of the intended scope of § 1–1527(c) can be found in three additional sources: [1] the legislative history of the analogous provision for attorney fees under the federal Freedom of Information Act, 5 U.S.C. §§ 552 to 552b (federal FOIA); [3] [2] judicial construction of that federal provision after adoption of the District FOIA; [4] and [3] legislative history and caselaw concerning other District of Columbia attorney fee provisions. [5]

## II.

In *Kay*, the Supreme Court found one overriding congressional purpose behind the Civil Rights Attorney's Fees Awards Act of 1976: to lower the cost barrier restricting access to the courts. [6] Both houses of Congress stressed that "a vast majority of the victims of civil rights violations cannot afford legal counsel." —— U.S. at —— n. 8, 111 S.Ct. at 1437 n. 8 (quoting from H.R.Rep. No. 94–1558, p. 1 (1976) U.S.Code Cong. & Admin.News 1976, p.

5908). Although the Court acknowledged that § 1988 "was no doubt intended to encourage litigation protecting civil rights," *id.* at ——, 111 S.Ct. at 1437, the Court found that goal to be a subsidiary, even inconsequential purpose. The Court concluded from the legislative history of § 1988, which focused on the public's inability to afford lawyers, that "the overriding statutory concern [of § 1988] is the interest in obtaining independent counsel for victims of civil rights violations." *Id.* The Court noted its agreement with the civil rights decisions of the federal circuits holding that a *pro se* litigant who is not a lawyer is not entitled to attorney fees under § 1988, and said that the question, therefore, "is whether a lawyer who represents himself [or herself] should be treated like other *pro se* litigants or like a client who has had the benefit of the advice and advocacy of an independent attorney." *Id.* Stressing that "[e]ven a skilled litigator who represents himself [or herself] is at a disadvantage in contested litigation," the Court reasoned that the statutory policy to encourage access to the courts through competent counsel "is better served by a rule that creates an incentive to retain counsel" in every case, rather than relying

3. The District FOIA is patterned after the federal FOIA. *See Dunhill v. Director, D.C. Dep't of Transp.*, 416 A.2d 244, 247 n. 6 (D.C.1980). We may therefore look to the legislative history of the federal FOIA for guidance in interpreting the district FOIA. *Cf. Corley v. United States*, 416 A.2d 713, 714 (D.C.) (to interpret District statute *concerning appointment of counsel in criminal cases*, court should look to congressional intent in adopting federal statute on which District statute was based), *cert. denied*, 449 U.S. 1036, 101 S.Ct. 614, 66 L.Ed.2d 499 (1980).

4. As Judge SCHWELB ably demonstrates, there had been no judicial construction of the federal FOIA on which the Council of the District of Columbia could have relied in enacting the District FOIA's attorney fee provision. *Ante* at 617 (Schwelb, J., concurring). In interpreting § 1–1527(c), however, we may still consider judicial construction of the federal FOIA after the adoption of the District FOIA. *See Pendleton v. D.C. Bd. of Elections and Ethics*, 449 A.2d 301, 305 (D.C.1982) (where District statute is modeled on federal act to a great extent, judicial construction of analogous provisions in federal act is

persuasive); *Corley*, 416 A.2d at 714; 2B NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 51.06 at 186 (5th ed. 1992) (court may presume that state legislature had existing federal statute in mind when enacting statute being construed); § 52.02 at 200 (judicial interpretation of federal statute useful in construing state statute copied from federal act).

5. *See Educators Ventures, Inc. v. Bundy*, 3 Haw. App. 435, 652 P.2d 637, 640 (1982) ("Reference to other analogous statutes with similar language and dealing with similar subject matter may be helpful in the interpretation of a doubtful statute"); 2B SUTHERLAND STATUTORY CONSTRUCTION § 53.03 at 233 (same); *see also id.* § 53.05 at 238 (reference to analogous but unrelated statute considered unreliable means of discerning legislative intent but valuable to show general course of legislative policy). *But see Brown v. Jefferson*, 451 A.2d 74, 76 (D.C.1982) (construction by implication from subsequent enactments of different statutes not favored).

6. *See also Cofield*, 648 F.2d at 988 n. 4 ("There is no suggestion that an award of [42 U.S.C.] section 1988 attorney's fees should be in any way punitive").

on self help—even by an attorney. *Id.* at ——, 111 S.Ct. at 1438. In short, the Court held that the legislative purpose of § 1988 was access to the courts through affordable, competent counsel, not enforcement of the civil rights acts.

In discussing *Kay*'s procedural history, the Court noted that the district court had denied an attorney fee by relying on a federal FOIA case from its own circuit, *Falcone v. I.R.S.,* 714 F.2d 646 (6th Cir. 1983), *cert. denied,* 466 U.S. 908, 104 S.Ct. 1689, 80 L.Ed.2d 162 (1984). *See Kay,* —— U.S. at ——, 111 S.Ct. at 1436. The Court then briefly summarized and quoted from *Falcone* in a footnote but did not rely on *Falcone* or mention that case again in the Court's analysis of attorney fee awards under § 1988. *See Kay,* at ——, 111 S.Ct. at 1436 n. 4.

*Falcone* is one of two cases—the other is *Aronson v. U.S. Dep't of Hous. and Urban Dev.,* 866 F.2d 1 (1st Cir.1989)—in which federal circuit courts of appeal have denied attorney fees under the federal FOIA to *pro se* attorney-plaintiffs. But neither *Falcone* nor *Aronson* (nor the cases on which they relied) thoroughly examined the legislative history of the federal FOIA's attorney fee provision. Two other federal courts, however, have done so: the District of Columbia Circuit in *Cuneo v. Rumsfeld,* 180 U.S.App.D.C. 184, 553 F.2d 1360 (1977), and the Fifth Circuit in *Cazalas v. U.S. Dep't of Justice,* 709 F.2d 1051 (5th Cir.1983). Based on that legislative history, both courts held that attorney fees are awardable under the federal FOIA to *pro se* attorney-plaintiffs.

### III.

In contrast with the Civil Rights Attorney's Fees Awards Act of 1976, the legislative history of the federal FOIA shows that congressional enactment of the attorney fee provision had two significant purposes: "access" to the courts and "enforcement" of FOIA (including deterrence against noncompliance). As a consequence, Congress used a more comprehensive approach under the federal FOIA than the purpose it selected for the federal attorney fee legislation construed in *Kay.* Congress intended for attorney fees to be awardable, in the court's discretion, not only to facilitate greater access to the courts but also to reward plaintiffs, without regard to financial need, for bringing successful litigation necessary to enforce the federal FOIA against the government.[7]

The 1974 Amendments[8] to the federal FOIA added an attorney fee provision, 5 U.S.C. § 552(a)(4)(E), authorizing courts to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case … in which the complainant has substantially prevailed."[9] The language of § 552(a)(4)(E) does not make clear whether *pro se* plaintiffs—whether attorneys or not—are eligible for attorney fee awards.[10] Indeed, "there is no evidence that Congress considered the pro se issue in wording the statute."[11] There is, however, considerable evidence that Congress intended the

---

**7.** *See Cazalas,* 709 F.2d at 1057 (government's arguments in opposition to fee award "inadequate to overcome the strong national policy of open government and the crucial role that attorney fees play in protecting this interest. Appellant, through her self-representation, employed legal skills to vindicate an important public right and is entitled to be compensated for the work she performed."); *Cuneo,* 180 U.S.App. D.C. at 190, 553 F.2d at 1366 ("As agents of the national policy of public disclosure, it is equitable that [successful FOIA litigants] be awarded for their service.").

**8.** The Amendments passed Congress "overwhelmingly" and survived President Ford's veto. *See* JAMES T. O'REILLY, 1 FEDERAL INFORMATION DISCLOSURE § 3.08 at 3–30 –31 (2d ed. 1992). "All

together, the amended Act reflects the power of frustration reflected in congressional distrust for agency withholding." *Id.*

**9.** Act of Nov. 21, 1974, Pub.L. No. 93–502, § (b)(2), 88 Stat. 1561, 1562 (1974) (codified at 5 U.S.C. § 552(a)(4)(E)). The 1974 amendments also established alternative venue in the District of Columbia for all FOIA actions. *Id.* at 1562 (codified at 5 U.S.C. § 552(a)(4)(B)).

**10.** See Note, *Fee Awards for Pro Se Attorney and Non–Attorney Plaintiffs under the Freedom of Information Act,* 52 FORDHAM L.REV. 374, 381–83 (1983) (hereinafter Note, *FOIA Fee Awards* ).

**11.** *Id.* at 383.

attorney fee provision to serve not only an "access" purpose, by lowering the cost barrier to obtaining requested information, but also a second, even more significant purpose wholly unrelated to a citizen's inability to afford counsel: enforcement of the government's FOIA obligations ("to encourage more faithful compliance ..., [and] to strengthen the citizen's remedy" for violations).[12]

More specifically, Congress suggested four factors for the courts to use in deciding whether to make a discretionary award of attorney fees in a FOIA case, most of which reflect the "enforcement" purpose:

> These four factors are: "(1) the benefit to the public, if any, derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law."

*Aronson,* 866 F.2d at 3 (quoting *Crooker v. U.S. Parole Comm'n,* 776 F.2d 366, 367 (1st Cir.1985)); *see Cazalas,* 709 F.2d at 1053. Although the cases do not uniformly recognize—or question—the source of these four factors, they are derived from the Senate version of the 1974 amendments.[13] The conference committee eliminated the four factors from the statutory language itself, but only because the committee believed that their enumeration would be "too delimiting."[14] The courts have consistently relied upon these factors because they were "intended to provide guidance and direction." *Nationwide Bldg. Maintenance v. Sampson,* 182 U.S.App.D.C. 83, 93, 559 F.2d 704, 714

(1977) (quoting Senate Report at 19). "By eliminating [the four] criteria, the conferees [did] not intend to ... preclude the courts, in exercising their discretion ... to take into consideration such criteria." Conference Report at 9–10, *reprinted in* Amendments Source Book at 227.

The first factor, focusing on the public benefit from FOIA litigation, reflects an enforcement purpose that transcends the individual's interest in access to the court. Commenting on the second factor, the Senate Report stated that a fee award would be appropriate—even where the information was sought for a commercial purpose—if the agency officials had been "recalcitrant in their opposition to a valid claim or [had] otherwise engaged in obdurate behavior."[15] This same enforcement rationale also presumably applies to the third factor, focusing on the nature of the complainant's interest. Finally, the fourth factor, "whether the government's withholding of the records sought had a reasonable basis in law,"[16] reflects an intent to deter agencies from responding unreasonably to FOIA requests. The Senate Report indicates that, under this criterion, a court should not award fees "where the government's withholding had a colorable basis in law," but stresses that the court should award fees "if the withholding appeared to be merely to avoid embarrassment or to frustrate the requester."[17]

In sum, in prescribing factors for the courts to use in awarding attorney fees under the federal FOIA, the Senate Report clearly expressed an intent to penalize agency recalcitrance, and thus to encour-

12. The general purposes of the 1974 amendments, as stated in the Senate Report, were "to facilitate freer and more expeditious public access to government information, to encourage more faithful compliance with the terms and objectives of the FOIA, to strengthen the citizen's remedy against agencies and officials who violate the Act, and to provide for closer congressional oversight of agency performance under the Act." S.REP. No. 854, 93d Cong., 2d Sess. 1 (1974) [hereinafter cited as Senate Report], *reprinted in* FREEDOM OF INFORMATION ACT AND AMENDMENTS OF 1974 (P.L. 93–5920) SOURCE BOOK 153 (Joint Comm. Print 1975) [hereinafter cited as Amendments Source Book].

13. *See* Senate Report at 50–51, *reprinted in* Amendments Source Book at 202–03.

14. *See* H.R.REP. No. 1380, 93d Cong., 2d Sess. 9 (1974) (Conference Report), *reprinted in* Amendments Source Book at 227.

15. Senate Report at 19, *reprinted in* Amendments Source Book at 171.

16. Senate version, *reprinted in* Senate Report at 51 *and in* Amendments Source Book at 203.

17. Senate Report at 19, *reprinted in* Amendments Source Book at 171.

age enforcement of FOIA, by building in an economic consequence [18] that deters resistance, including defensive litigation, against legitimate requests for information.[19] The Senate Report put the point emphatically: "it would seem tantamount to a penalty to require the wronged citizen to pay his [or her] attorney's fees to make the government comply with the law." [20] Without the fee provision, the government could frustrate the purposes of FOIA by litigating every request. But, with addition of the fee-shifting provision, "the committee [felt] that once the Government has to take full responsibility for litigating indefensible cases, it will think twice before going to the mark in the first instance." [21]

This examination of the legislative history of the federal FOIA's attorney fee provision demonstrates that Congress intended this provision to accomplish more than merely serving "the interest in obtaining independent counsel for victims," the single dominant purpose of fee-shifting under the Civil Rights Attorney's Fees Awards Act of 1976. *Kay,* —— U.S. at ——, 111 S.Ct. at 1437. The United States Court of Appeals for the Fifth Circuit, in a decision issued three months after *Kay,* examined FOIA's legislative history and found the enforcement purpose alive and well.

> Nothing from the Senate Report nor from any other source demonstrates congressional intent . . . to limit coverage to complainants who cannot afford to litigate their rights under FOIA. Moreover, the goal of encouraging litigation of meritorious FOIA claims is doubtlessly furthered by reimbursing the legal fees of all complainants who substantially prevail and who meet the [four] traditional criteria—even those complainants . . . who could finance their own lawsuit. The princip[le] is obvious: The greater the likelihood that one will be reimbursed for bringing a valid claim, the more willing one will be to bring it. The availability of judicial enforcement will in turn insure that proper disclosures are voluntarily made.

*State of Texas v. I.C.C.,* 935 F.2d 728, 733 (5th Cir.1991). While acknowledging that "one of the goals of fee-shifting is to empower average citizens to invoke FOIA," the court in *Texas v. I.C.C.* concluded, forcefully, that "the *principal* goal" of the FOIA attorney fee provision is enforcement: "to encourage government disclosure of information." *Id.* at 732 (emphasis added).[22]

I am convinced, therefore, that *Kay* does not dispose of McReady's claim for attorney fees. The goals of both the District FOIA and the federal FOIA fee-shifting provisions include enforcement of the Act and are not limited to the principal "access" purpose of the comparable provision in the Civil Rights Attorney's Fee Awards Act of 1976.[23]

**18.** A federal agency that unreasonably withholds information requested under FOIA must pay all costs and fees assessed against it from the agency's own budget. *See* Senate Report at 17, *reprinted in* Amendments Source Book at 169.

**19.** The United States Court of Appeals for the Fifth Circuit has identified the attorney fee provision as a central feature of the FOIA enforcement mechanism: under FOIA, "an award of attorney's fees may be in part punitive, 'a useful sanction for unfounded resistance to a disclosure request.'" *Cofield,* 648 F.2d at 988 n. 4 (quoting *Lovell v. Alderete,* 630 F.2d 428, 437 (5th Cir.1980)). *See also Cazalas,* 709 F.2d at 1057; *Cuneo,* 180 U.S.App.D.C. at 190, 553 F.2d at 1366.

**20.** Senate Report at 19, *reprinted in* Amendments Source Book at 171. The House Report noted that in any case the citizen-plaintiff always pays, by way of federal taxes, the litigation costs of the non-complying agency. H.R.Rep. No. 1419, 92d Cong., 2d Sess. 74 (1972), *reprinted in* Amendments Source Book at 81. Without fee-shifting, then, the successful FOIA litigant pays his or her own litigations costs and, at least in part, the costs of the opposing party that has defied the law.

**21.** 120 Cong.Rec. 6814 (1974) (remarks of Rep. Alexander).

**22.** The *Texas v. I.C.C.* decision does not address *Kay* because the case dealt with a fee award to the state of Texas, not to a pro se litigant. I cite this case, however, as reconfirmation of the enforcement purpose of the federal FOIA's attorney fee provision.

**23.** The majority belittles, *see ante* at 614, the distinction I stress between the "overriding statutory concern" of the Civil Rights Attorneys' Fees Awards Act—access to "independent coun-

### IV.

### A.

As indicated earlier, two of the four federal circuit court cases that have addressed the particular issue now before us have concluded, based on legislative history, that the federal FOIA attorney fee provision authorizes discretionary awards of attorney fees to attorney-plaintiffs who have litigated *pro se*.[24]

In the District of Columbia Circuit, *Cuneo* recognized years ago the enforcement purpose of the federal FOIA's attorney fee provision. The court held that "a complainant, who is otherwise eligible under [5 U.S.C. § 552(a)(4)(E)] for an award of attorney fees, should not be denied those fees simply because he [or she] happens to be an attorney." *Cuneo*, 180 U.S.App.D.C. at 190, 553 F.2d at 1366. With this statement, the court was acknowledging that, in the District of Columbia Circuit, even a *pro se* plaintiff who is not an attorney is eligi-

ble for an attorney fee award under FOIA. *See Holly v. Acree*, 72 F.R.D. 115 (D.D.C. 1976), *aff'd sub nom. Holly v. Chasen*, 186 U.S.App.D.C. 329, 569 F.2d 160 (1977). *See also Crooker v. U.S. Dep't of the Treasury*, 213 U.S.App.D.C. 376, 663 F.2d 140 (1980) (*pro se* non-attorney plaintiff, even though a federal prisoner, eligible for attorney fee award); *Cox v. U.S. Dep't of Justice*, 195 U.S.App.D.C. 189, 601 F.2d 1 (1979) (non-attorney *pro se* plaintiff eligible for attorney fee award); *Jones v. U.S. Secret Service*, 81 F.R.D. 700 (D.D.C.1979) (same).[25]

Following *Cuneo*, the Fifth Circuit held in *Cazalas* that any attorney who, as *pro se* plaintiff, sues to force the government to comply with the federal FOIA is eligible for a fee award.[26] After carefully examining the legislative history of the federal FOIA, the court concluded that Congress intended both an access purpose and an enforcement purpose in enacting the fee provision. The court expressed the en-

sel for victims of civil rights violations," *Kay*, — U.S. at —, 111 S.Ct. at 1437—and the dual purpose of FOIA attorney fee provisions: access to counsel *and* enforcement of the government's FOIA obligations. In the first place, my colleagues altogether ignore the legislative history of the 1974 Amendments that added the federal FOIA attorney fee provision. Second, they misunderstand the two purposes of that provision. The point is that, in addition to promoting access to the courts, the FOIA attorney fee provision is intended as a mechanism to help force a reluctant *government to comply with the law*; the focus is on the government's doing its job, not merely on the citizen's right to come to court. By denying fees to attorney-plaintiffs under the Civil Rights Attorneys' Fees Awards Act, the Supreme Court in *Kay* has cut back on the class of compensable private attorneys general under that Act; the Court has not thereby done so under FOIA. If we focus on the plaintiff's perspective, it may be true that a *pro se* attorney-plaintiff is not necessarily dependent on the availability of attorney fees as a way to get into court; presumably an attorney at least has the knowledge necessary to file and pursue a lawsuit. But when we focus on the "enforcement" purpose, the idea is to maximize the number of responsible challenges to government withholding of information. An attorney-plaintiff, as an officer of the court, presumably will not file a frivolous lawsuit, and thus there is reason to use the availability of *fees to encourage such plaintiffs to file*, in contrast with a mere "access" policy that is arguably satisfied

by the attorney-plaintiff's credentials themselves. Finally, the majority is plainly wrong in claiming "*Kay*'s heavy reliance upon the holding of *Falcone*." *Ante* at 614. *See Kay*, — U.S. at — & n. 4, 111 S.Ct. at 1436 & n. 4.

**24.** Although Judge Schwelb, in his concurrence, concludes that *Kay* sounded the death knell for federal decisions allowing attorney fees for *pro se* attorney litigants, there is no evidence that *Kay* has had that effect in FOIA cases.

**25.** Today, another division of this court has declined to follow these precedents from the United States Court of Appeals for the District of Columbia Circuit. In *Donahue v. Thomas*, 618 A.2d 601 (D.C.1992), the division holds instead that a *pro se* litigant who is not an attorney is not eligible for an award under the District FOIA. The outcome in the present case, however, does not hinge upon the outcome in *Donahue* because here—as in *Cazalas*—the *pro se* party is an attorney. *See infra* PART IV(F).

**26.** In contrast with the District of Columbia Circuit, the Fifth Circuit has held that the federal FOIA precludes an attorney fee award to a *pro se* litigant who is not an attorney. *See Barrett v. Bureau of Customs*, 651 F.2d 1087 (5th Cir.1981), *cert. denied*, 455 U.S. 950, 102 S.Ct. 1454, 71 L.Ed.2d 665 (1982); *Cofield, supra* note 7. *Barrett* expressly left open the question whether an attorney who proceeds *pro se* is entitled to such fees—a question *Cazalas* later answered in the affirmative.

forcement purpose [27] this way: "The fee provision is designed to deter the government from opposing justifiable requests for information under the FOIA and to punish the government where such opposition is unreasonable." *Cazalas,* 709 F.2d at 1057. The court concluded, "These goals apply with equal force where an attorney litigant proceeds *pro se." Id.*

It is important to understand, therefore, that the federal circuits sustaining attorney fee awards under FOIA to *pro se* attorney-plaintiffs have made detailed use of the legislative history, *see Cazalas; Cuneo;* the circuits going the other way, and the decisions on which they rely, have not, *see Aronson; Falcone.*[28] I am persuaded by the analyses in *Cazalas* and *Cuneo* that reject the arguments embraced in *Aronson* and *Falcone.*

### B.

Courts holding that *pro se* attorney-plaintiffs are not eligible for fee awards have argued that *pro se* plaintiffs do not incur legal costs.

> The award of attorney's fees to successful FOIA plaintiffs was intended to relieve plaintiffs with legitimate claims of the burden of legal costs; it was not intended as a reward for successful claimants or as a penalty against the government. [Citations omitted.] Thus, we held in *Wolfel [v. United States,* 711 F.2d 66 (6th Cir.1983)] that those claimants who chose to proceed without legal representation were not entitled to be compensated for legal costs which were never incurred. The same reasoning applies to *pro se* plaintiffs who are also attorneys since no legal costs are incurred in such cases.

*Falcone,* 714 F.2d at 647 (footnote omitted). *See also Cunningham v. F.B.I.,* 664 F.2d 383, 385 (3d Cir.1981); *Crooker v. U.S. Dep't of Justice,* 632 F.2d 916, 921 n. 7 (1st Cir.1980). This analysis is flawed for two reasons. First, the court incorrectly

ignores the attorney fee provision's enforcement purpose under FOIA. Second, a *pro se* plaintiff incurs substantial costs attributable to gainful work foregone (so-called opportunity costs). *See Cazalas,* 709 F.2d at 1056. And it is especially easy to demonstrate that these are "legal costs" in the case of an attorney-plaintiff whose work foregone, including its value, "is of the same nature as that actually performed" *pro se. Id.* at 1057.

### C.

Another argument against awarding fees to *pro se* attorney-plaintiffs is premised on a belief that the statute is designed to encourage litigants, even attorney-litigants, to consult with outside attorneys as a precaution against charging ahead, without objectivity, into ill-advised litigation. *See Aronson,* 866 F.2d at 5–6; *Falcone,* 714 F.2d at 647–48. Having examined the legislative history of the federal FOIA, I see "little evidence ... that the purpose of the fee provision is to insure *objective* representation by an attorney. On the contrary, the fee provision is designed to promote *vigorous advocacy* on behalf of citizens seeking government information so that the government will be unable to escape from rightful compliance with the FOIA." *Cazalas,* 709 F.2d at 1056. It is true that a trained advocate is more likely to succeed at litigation than a lay *pro se* plaintiff, and it is probably true that an attorney-plaintiff is well advised to seek outside counsel rather than to engage in self-representation. But there is not a shred of evidence I can find in the legislative history of the federal FOIA to indicate that Congress intended to disqualify an "attorney"-plaintiff from an "attorney" fee.

### D.

Still another argument against allowing fees to *pro se* attorney-plaintiffs is that "attorneys will abuse the FOIA by bring-

---

**27.** *Cazalas* identified both a deterrent purpose and a punitive purpose for the attorney fee provision. Both deterrence and punishment are separate aspects of the "enforcement" purpose.

**28.** *Aronson* relied on cases interpreting attorney fee provisions of other statutes. *See Aronson,* 866 F.2d at 5.

ing litigation solely to generate fees for themselves." *Cazalas*, 709 F.2d at 1056. One court is even concerned that, if fees are awardable to attorney-plaintiffs, a " 'cottage industry' " will develop among inactive and other attorneys to use FOIA "solely as a way to generate fees rather than to vindicate personal claims." *Falcone*, 714 F.2d at 648. I disagree. This argument suggests that an attorney would dream up FOIA requests in the hope the government would fail to comply with the statute. I find this possibility farfetched. In any event, if a request is valid, whatever the motive behind it, the law requires the government to disclose the requested information promptly, and no fee will be called for. *See Cazalas*, 709 F.2d at 1056. If, on the other hand, there is a colorable legal basis for the government's withholding the information, the court is not likely to award a fee. *See id.* Moreover, the court may impose sanctions against the attorney for filing a frivolous complaint. *See* Super.Ct.Civ.R. 11; Fed.R.Civ.P. 11.

### E.

Some courts say that awarding attorney fees to *pro se* plaintiffs—whether or not they are attorneys—will overly encourage citizen suits and improperly increase the amount of FOIA litigation. *See Falcone*, 714 F.2d at 648; *Cunningham*, 664 F.2d at 386; *Crooker v. U.S. Dep't of Justice*, 634 F.2d 48, 49 (2d Cir.1980). *See also* HERBERT B. NEWBURG, ATTORNEY FEE AWARDS § 20.05 at 394 (1986). That argument is based on a premise that FOIA litigation is undesirable. Congress, however, perceived that agencies were delaying or denying disclosure under the original FOIA and that private litigation was not sufficient to enforce the statute. The 1974 amendments, including the attorney fee provision, were designed to remedy what Congress saw as defects in the original FOIA and thus "to encourage more faithful compliance" and

"to strengthen the citizen's remedy against agencies and officials who violate the Act."[29] Congress's inclusion of the attorney fee provision, therefore, negates any notion that Congress would be interested in discouraging FOIA litigation.[30]

### F.

Finally, the courts that have held *pro se* attorney-plaintiffs ineligible for fee awards are in jurisdictions where courts have previously held that *pro se* plaintiffs who are not attorneys are ineligible for fees under FOIA. Thus, as in *Kay*, these courts have asked, fundamentally, whether there is any reason to grant an exception for a *pro se* attorney-plaintiff. *See Aronson*, 866 F.2d at 5; *Falcone*, 714 F.2d at 647. In *Cuneo*, of course, the situation was the opposite. In a jurisdiction where every *pro se* plaintiff is eligible for an attorney fee under the federal FOIA, the question—answered in the negative—was whether there was any principled basis for excluding attorney-plaintiffs from such eligibility. *See Cuneo*, 180 U.S.App.D.C. at 190, 553 F.2d at 1366. Only in *Cazalas*, therefore, do we have a case in which the court found attorney-plaintiffs eligible for fees under FOIA when other *pro se* plaintiffs were not—a result I believe is justified for two reasons. First, "Congress sought to encourage legal representation; thus it makes sense to compensate lawyers for this work." *Cazalas*, 709 F.2d at 1057. The cases that deny fee awards to non-attorneys who litigate *pro se* generally echo this notion. *See, e.g., Wolfel v. United States*, 711 F.2d 66, 68 (6th Cir.1983) ("Persons contemplating legal action should be encouraged to consult with attorneys.") (quoting *Barrett v. Bureau of Customs*, 651 F.2d 1087, 1089 (5th Cir.1981), *cert. denied*, 455 U.S. 950, 102 S.Ct. 1454, 71 L.Ed.2d 665 (1982)). They specifically point out how an attorney can facilitate the successful pressing of a FOIA

---

**29.** Senate Report at 1, *reprinted in* Amendments Source Book at 153 (statement of purpose for the 1974 amendments).

**30.** This argument, of course, applies to all *pro se* litigants, not just to *pro se* attorney-plaintiffs. Nevertheless, the fact that Congress intended to encourage rather than deter prosecution of meritorious FOIA lawsuits adds strength to the argument that a *pro se* "attorney" should not be categorically denied eligibility for "attorney" fee awards.

request. *See id.* Second, fees are more easily calculated for *pro se* attorneys than for other *pro se* plaintiffs because attorneys regularly charge for legal work. *See Cazalas,* 709 F.2d at 1057. *See also Cunningham,* 664 F.2d at 386 (valuation of fee award for non-attorney *pro se* litigant "a far thornier problem" than valuation of a lawyer's time); Note, *FOIA Fee Awards,* 52 FORDHAM L.REV. at 394 ("Valuation may be less difficult when the pro se litigant is an attorney because theoretically the value of the work foregone is equal to the value of the work performed."). *But see Aronson,* 866 F.2d at 5 ("[L]awyers are not the only persons whose stock in trade is time and advice.").

In this jurisdiction, a division of this court has held today that non-attorney *pro se* plaintiffs are not compensable under the District FOIA's attorney fee provision. *See Donahue v. Thomas,* 618 A.2d 601 (D.C.1992). For my own part, I do not believe our decision in the present case should be dictated by the reasoning in *Donahue.* I am satisfied that an "attorney"-plaintiff, through legal self-representation, is eligible under the plain words of the statute for an "attorney" fee.[31] Given, moreover, the enforcement purpose of the District's FOIA, coupled with an attorney's responsibility as an officer of the court not to engage in frivolous litigation, I am satisfied that there is no policy reason why attorney-plaintiffs should be ineligible for attorney fee awards under the District FOIA, even if other *pro se* litigants are not eligible for fees.

### V.

Having reviewed federal legislative history and caselaw for insight into the intended scope of the District FOIA's similar attorney fee provision, I believe it is useful and appropriate, finally, to look at the purposes the Council has invoked in adopting other attorney fee provisions authorizing awards against the government and at the ways in which this court has applied this legislative history to the situation of *pro se* attorney-plaintiffs.

This court has previously recognized that a provision for awarding attorney fees against the government serves an enforcement purpose, as well as an access purpose. Under the Rental Housing Act of 1980, the attorney fee provision effectively authorizes tenants to act "as private attorneys general." *Ungar v. D.C. Rental Hous. Comm'n,* 535 A.2d 887, 892 (D.C. 1987). We have held, moreover, that a *pro se* plaintiff who happens to be an attorney is eligible for a fee award under that Act, without regard to whether other *pro se* plaintiffs would be eligible for such fees. *Alexander v. D.C. Rental Hous. Comm'n,* 542 A.2d 359, 360–61 (D.C.1988).[32] In fact, in *Alexander* we recognized a presumption in favor of awarding attorney fees under the Rental Housing Act to a successful attorney-tenant acting *pro se.* We noted that "a significant concern of attorney fees award provisions is to increase the level of competence with which such [housing] complaints are prosecuted. To achieve this end, it makes no difference whether an attorney represents himself or herself; 'the fact that the lawyer she chose was herself is inconsequential.'" *Alexander,* 542 A.2d at 361 (quoting *Duncan v. Poythress,* 777 F.2d 1508, 1513 (11th Cir.1985) (en banc), *cert. denied,* 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986)). *See also* Vincent M. Waldman, Note, *Pro Se Can You Sue? Attorney Fees for Pro Se Litigants,* 34 STAN.L.REV. 659, 666 (1982).

In reaching this conclusion, moreover, we rejected arguments that attorneys, acting as *pro se* plaintiffs, will abuse attorney fee provisions and will not act with sufficient objectivity. We associated ourselves with courts that reject the notion that inactive

---

**31.** "[T]he plain and ordinary meaning of attorney's fees requires payment to an attorney for services as a legal agent...." *Donahue,* at 607. I fail to see how the fact that the attorney is representing himself in the instant case can make any difference in our reading of the plain language of the statute.

**32.** The court took "no position" on the question whether lay *pro se* litigants are entitled to attorney fees under the Rental Housing Act. *Alexander,* 542 A.2d at 360 n. 6.

attorneys will create a "cottage industry" to support themselves on fee awards. *Alexander*, 542 A.2d at 361. We stressed—as the court did in *Cazalas*—that fees are discretionary, that they are awardable only to prevailing plaintiffs, and that attorneys are subject to sanctions for frivolous filings. *See id.*[33]

In sum, this court, in effect, already has held that when a local statute authorizing attorney fees against the government has an enforcement purpose—as does the District FOIA's attorney fee provision—the arguments in favor of allowing fees for attorney-plaintiffs should prevail over arguments to the contrary. As I noted above, the legislative history of the District's own FOIA makes it clear that the provision of attorney fees was intended as an enforcement mechanism to "encourage citizens to seek the release of information wrongfully with[h]eld."[34] At least as to attorney-plaintiffs, therefore, I see no reason why their *pro se* status should disqualify them from eligibility for discretionary attorney fee awards when they seek to carry out the legitimate purposes of the District FOIA on their own behalf.

## VI.

The District FOIA is grounded on the public policy of open government. "The Act begins from the premise that openness in government serves the public interest and from the further premise that members of the public have the right to know what government officials are doing."[35] This policy of openness is a cornerstone of democratic self-government. As James Madison noted long ago, "[A] people who mean to be their own governors[ ] must arm themselves with the power knowledge gives. A popular government without popular information or the means of acquiring it, is but a prologue to a farce or a tragedy or perhaps both."[36]

The majority today ties the hands of the trial court, denying it the discretion to effectuate the enforcement of this policy of

---

**33.** The majority faults my reliance on *Alexander* because, according to my colleagues, *Kay* implicitly overruled the Eleventh Circuit's decision in *Duncan*, a civil rights case on which we relied in *Alexander*. That argument is misplaced, however, for there are other cases, indeed FOIA cases, on which this court could just as easily have relied for the same policy views that attracted this court in *Duncan*. *See, e.g., Cazalas; Cuneo.* In fact, presumably we would have relied on the reasoning of such other cases because in *Alexander* we perceived an enforcement purpose underlying the Rental Housing Act. *See Alexander*, 542 A.2d at 360 (quoting *Ungar*, 535 A.2d at 892)). The majority replies, *ante* at 614 n. 7, that *Cazalas* and *Cuneo* are just as obsolete as *Duncan* because they, too, relied upon civil rights decisions undermined by *Kay*. That argument also is misplaced. The fact that these courts, in part, relied on civil rights cases does not detract from the fact that they fundamentally relied on legislative history to show an enforcement purpose, not merely an access purpose, under the federal FOIA—legislative history that my colleagues altogether ignore. Thus, *Cazalas* and *Cuneo*, as well as this court's decision in *Alexander*, are not limited to the access rationale that drove—and limited—the *Kay* analysis. For this reason, the erosion of caselaw supporting a court's opinion does not necessarily serve—and does not in this case serve—as a proper basis for saying that the opinion is "effectively overrule[d]." *Ante* at 614.

**34.** Memorandum of Committee on Government Operations, *supra* note 1, at 8. *See* discussion *supra* in Part I. It is also interesting to note the legislative history of the "District of Columbia Family and Medical Leave Act" (D.C.Code § 36–1301 *et seq.* (1992 Supp.)). In a committee report on this Act, the Summary of Major Provisions states: "Providing for ... attorney's fees is intended to deter employers from violating the law and to ensure that employees will be compensated for their actual losses." Report of the Committee on Housing and Economic Development to the District of Columbia Council on the "District of Columbia Family and Medical Leave Act of 1990" Bill 8–82 (May 30, 1990) at 17. Thus here as well, albeit in another context, the District's Council has specifically endorsed the position that there is an enforcement purpose in an attorney fee provision.

**35.** Memorandum of Committee on Government Operations, *supra* note 1, at 3. *Cf.* Edward M. Kennedy, *Foreword: Is the Pendulum Swinging Away from Freedom of Information?* 16 Harv.C.R.–C.L.L.Rev. 311, 311 (1981) (federal "FOIA is built upon the fundamental premise that government information should be available to the public, absent a compelling reason for nondisclosure").

**36.** *Quoted in* Kennedy, *Foreword, supra* note 35, at 311 (citing quotation in House Comm. on Government Operations, A Citizen's Guide on How To Use the Freedom of Information Act and the Privacy Act in Requesting Government Documents 2, H.Rep. No. 95–793, 95th Cong., 1st Sess. (1977)).

open government by an award of "attorney" fees to a member of the bar—an "attorney"—who prosecutes his or her own FOIA claim. The court's hands are tied no matter how egregious the government's violation and no matter whether the lawyer's self-representation was personally necessary. The discretionary nature of the trial court's decision whether to award attorney fees is protection enough against the abuses the majority fears. Any provision that fosters the policy of openness in government—as the attorney fee provision of the District's FOIA does—is entitled to strict enforcement, which the majority today has failed to afford.

## VII.

Finally, I must disagree with the majority's ruling, sustaining the trial court, "that release of the exemption (2) documents was not prompted by the law suit," *ante* at 616, and thus that costs are not awardable with respect to those documents.

The District's FOIA requires an agency to respond to a FOIA request within ten days, either (1) by releasing the documents or (2) by notifying the requester that the documents will not be released and the reasons for that determination or (3) by notifying the requester that the agency needs more time to make the determination. D.C.Code §§ 1–1522(c) and (d). DCRA fell far short of this mandate. Indeed, DCRA did almost nothing to comply with the statute until McReady filed suit in November 1988, fourteen months after McReady's first FOIA request. There is every indication that, absent this lawsuit, DCRA would have continued to defy its FOIA obligations. Although the Mayor's Legal Counsel, Dr. Reid, had ordered DCRA to supply him with a list of the requested documents in August 1988,

McReady had no way of knowing—nor do we now know—whether DCRA would ever have complied with Dr. Reid's order, let alone turned over requested documents, but for McReady's lawsuit.

It took three years from the date of McReady's first request, including 20 months after he filed suit, for the District to provide McReady with the exemption (2) documents. The fact that they "were released because the investigation of Moss had been completed," *ante* at 612, many months after the District allegedly was obliged to have made them available, does not necessarily mean there was no causal connection between the lawsuit and required release of the documents. If the documents were not in fact exempt from disclosure, as McReady contends, he was entitled to them much earlier—a result he could not have achieved without his lawsuit. Moreover, on this record it appears to me that, without the lawsuit, DCRA probably never would have turned over the first 19 documents responding to McReady's first FOIA request or the 14 documents responding to his third request. Accordingly, any remand on costs should include trial court scrutiny of McReady's entitlement to all requested records.[37]

## VIII.

Respectfully, therefore, I dissent. I would reverse and remand for the trial court to exercise its discretion over appellant's claim for attorney fees as the prevailing party, as well as to review again all costs to which McReady claims he is entitled as the prevailing party for all documents released.

**37.** On March 10, 1990, after *in camera* inspection of the exemption (2) documents, the trial court granted the District's motion for summary judgment, holding that the documents were exempt from disclosure, and placed these documents under seal. McReady appealed to this court. In November 1990, however, the trial court vacated its order "for the purpose of presenting a written statement of the Court's findings," as required by *Washington Post v. Minority Business Opportunity Comm'n*, 560 A.2d 517 (D.C.1989). This court later granted the District's motion to remand the case to the trial court for a hearing on whether the case should be dismissed as moot because of the unwitting release of the contested documents by DCRA's new Public Information Coordinator. The trial court dismissed the case as moot in May 1991. Accordingly, McReady has never received a definitive court ruling on the exemption (2) documents.